No.  89-583

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

---

RAYMOND G. BECKY and MARGARET K. BECKY,
husband and wife, individually; and DAVID GLAUS
and RAMONA GLAUS, husband and wife; and
WARREN G. GLAUS and ROSAMOND F. GLAUS, husband
and wife; individually and d/b/a/ 76 RANCHES,
an Idaho partnership,
     Plaintiffs and Appellants,
-vs-
THE NORWEST BANK DILLON, N.A., formerly the
FIRST NORTHWESTERN NATIONAL BANK OF DILLON,
ROBERT MOUNTAIN and RONALD JOHNSON, individually and
in their capacities as agents or officers of
NORTHWEST BANK DILLON, N.A.,
     Defendants and Respondents.

---

APPEAL FROM:    District Court of the Fifth Judicial District,
                In and for the County of Beaverhead,
                The Honorable Frank M. Davis, Judge presiding.


COUNSEL OF RECORD:

        For Appellants:

                James E. Purcell, Henningsen, Purcell, Vucurovich
                & Richardson, P.C., Butte, Montana; Phillip D.
                Tawney, Mullendore and Tawney, Missoula, Montana;
                Peter M. Meloy, Meloy Law Firm, Helena, Montana

        For Respondents:

                Donald C. Robinson, Poore, Roth & Robinson, Butte,
                Montana (Norwest Bank Dillon); Gregory C. Black,
                Corette, Smith, Pohlman & Allen, Butte, Montana
                (Mountain and Johnson)

---

                            Submitted:  March 16, 1990

                            Decided:  September 20, 1990

FILED

'90 SEP 20 PM 1 47
ED SMITH, CLERK
MONTANA SUPREME COURT

Filed:

_____
              Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Plaintiffs and appellants, Raymond and Margaret Becky, David and Ramona Glaus, and Warren and Rosamond Glaus, partners in the 76 Ranches, appeal from an order of the Fifth Judicial District Court, Beaverhead County, dismissing their claims against defendants, Norwest Bank Dillon, Robert Mountain and Ronald Johnson. We reverse.

The sole issue raised on appeal is whether the District Court abused its discretion by dismissing plaintiffs' lawsuit for failure to prosecute.

On July 12, 1984, plaintiffs filed this action against Norwest Bank Dillon and its officers, Mountain and Johnson, individually and as agents for the bank, as well as against William Ballard, another of the bank's officers, and Norwest Corporation, the principal shareholder of the bank. The complaint alleged bad faith, fraud, commercially unreasonable sale of collateral, conversion, tortious interference with contract, breach of fiduciary duty, deceit, negligent misrepresentation and constructive fraud, all arising from loan transactions made from 1980 through 1982.

Defendants responded with pro forma motions to dismiss. When the motions were denied, they filed their answers and counterclaims. The bank and Ballard counterclaimed for breach of promissory notes, monies due and owing on a foreign judgment, bad faith, malicious prosecution and abuse of process. In addition,

Ballard alleged intentional or negligent infliction of emotional distress. Mountain and Johnson obtained separate counsel and filed their own counterclaims, alleging malicious prosecution as well as intentional or negligent infliction of emotional distress.

Plaintiffs had employed a Boise, Idaho, law firm as lead counsel and Henningson & Purcell of Butte as local Montana counsel. In October, 1984, the Boise firm withdrew from the suit because of the difficulty of conducting the case from Idaho. On December 6, 1984, Thomas A. Budewitz of the firm of Hooks & Budewitz in Townsend replaced the Boise firm as lead counsel.

In December, 1984, plaintiffs moved to amend their complaint to consolidate the counts against the defendants, add a claim for emotional distress and drop Norwest Corporation and Ballard as party defendants. After briefing, the District Court granted the motion. Defendants answered the amended complaint, reasserting their previous counterclaims.

On May 2, 1985, plaintiffs moved to dismiss the counterclaims alleged by defendants. The question was briefed by both sides but was never ruled upon by the District Court.

In the meantime, both sides had commenced discovery. From October, 1984, through December, 1986, all parties served and answered requests for production. They also engaged in extensive oral discovery, deposing a large number of parties and witnesses. During this time, some depositions were interrupted or discontinued for various reasons, several were postponed because of scheduling difficulties, and at least one was unable to take place because

3

the witness failed to appear. It does not appear that the blame for these inconveniences can be laid at the feet of one side or the other, both were responsible for the delays, cancellations and postponements.

The last formal discovery effort engaged in by either side occurred on March 10, 1987, when Mountain and Johnson served plaintiffs with another round of interrogatories and requests for production. Although plaintiffs failed to respond, Mountain and Johnson did not follow up on the requests nor did they avail themselves of other formal remedies, such as moving to compel a response.

While discovery was taking place, the action was set for trial on two different occasions. The first trial date of January 5, 1987, was vacated upon stipulation of counsel and reset for April 6, 1987. Subsequently, the District Court vacated the April trial date because of scheduling conflicts of its own.

Other than the filing of depositions on July 15, 1987, and counsels' February 29, 1988, stipulation to a discovery deadline of November 1, 1988, no further action is recorded in the file until June 29, 1989, when the District Court ordered a case status conference for August 7, 1989. The attorneys for both sides stipulated to reset the conference for August 14, 1989.

On July 12, 1989, attorney Budewitz forwarded a consent to withdraw as attorney of record form to plaintiff Raymond Becky. Becky, in turn, forwarded the form to the Glauses, who resided in Oregon. The form had not been returned by the Glauses prior to the

4

status conference.

The status conference was conducted by telephone on August 14, 1989. During the conference, Budewitz moved to withdraw as counsel for plaintiffs and defendants moved to dismiss plaintiffs' claims for failure to prosecute. The District Court granted Budewitz's motion to withdraw and relieved both Budewitz and James Purcell of the firm of Henningson & Purcell as counsel of record, even though Purcell, who did not participate in the conference, had made no such request of the court. The court also granted the motion to dismiss for failure to prosecute, even though plaintiffs had not been notified that such a motion would be presented at the conference. The court did, however, give plaintiffs 30 days to employ other counsel and have the case reinstated.

Upon learning of the withdrawal and dismissal orders, Purcell advised plaintiffs that he would stay on the case until the matter was resolved. He began looking for new counsel. On his recommendation, plaintiffs consulted with two other attorneys. One was unable to take the case, however, because of a conflict of interest. It is unclear why the other attorney declined the case.

In September, 1989, plaintiffs moved the court to reinstate their claims. Defendants objected to the reinstatement, alleging that the lengthy lawsuit had prejudiced them because they were forced to list the suit as a contingent liability on their financial statements.

The trial court set a hearing for October 2, 1989, ordering plaintiffs to show cause why the case should be reinstated.

Plaintiffs personally attended and testified at the hearing. In addition, they presented to the court their new lead counsel, who assured the court that he would attempt to bring the case to trial in the spring of 1990.

During the reinstatement hearing, plaintiffs refuted the allegations made by Budewitz in his affidavit supporting his motion to withdraw as counsel of record. According to Budewitz, he delivered the complete case files to Raymond Becky in October, 1988, with the understanding that Becky would give the files to a Billings attorney, who would then be substituted for Budewitz as lead counsel. Becky acknowledged that he received the case files from Budewitz but stated that he delivered them to an agricultural financial consultant who was to analyze the transactions at issue in the case. He also acknowledged meeting the Billings attorney in the financial consultant's office. He understood, however, that the reason for consulting with another attorney was because Budewitz desired assistance from an additional law firm not because Budewitz had decided to withdraw from the case. Becky also understood that the Billings attorney declined the case because the attorney believed that the suit required two full-time lawyers, and Budewitz could no longer devote full time to the action.

After the Billings attorney declined his assistance, plaintiffs contacted a Great Falls attorney about becoming involved in the case, who in turn contacted Budewitz. The record does not disclose why the Great Falls attorney decided not to take the case.

Becky testified that he had been informed by Budewitz that

6

discovery had been delayed because of the difficulty of getting three sets of attorneys together to attend depositions, many of which were to take place outside of Montana. As Becky had attended many of the depositions that had already taken place, he had personal knowledge of the difficulties the attorneys had encountered in attempting to conduct oral discovery.

Budewitz stated in his affidavit that he had not spoken to any of the plaintiffs since October 28, 1988, an assertion that Becky flatly denied during the reinstatement hearing. Warren Glaus also testified at the hearing that his wife had attempted to contact Budewitz after October, 1988, but that the attorney never returned her phone call.

In an order entered October 16, 1989, the trial court denied plaintiffs' motion to reinstate, finding a total absence of any cause for the requested reinstatement. Pursuant to Rule 54(b), M.R.Civ.P., the court entered final judgment, dismissing plaintiffs' complaint with prejudice and expressly preserving defendants' counterclaims. Plaintiffs subsequently filed this appeal.

The sole issue is whether the District Court abused its discretion in dismissing plaintiffs' complaint for failure to prosecute.

A party who has not exercised due diligence in bringing his case to a conclusion may be in danger of having his claims dismissed by the district court. Shackelton v. Neil, 207 Mont. 96, 100, 672 P.2d 1112, 1114 (1983). The Rules of Civil Procedure

7

authorize the district court to dismiss an action for failure to prosecute. Rule 41(b), M.R.Civ.P., provides in pertinent part:

> For failure of the plaintiff to prosecute . . . a defendant may move for dismissal of an action or of any claim against him. . . . Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision . . . operates as an adjudication upon the merits.

The district court is accorded broad discretion to determine whether a cause of action should be dismissed for the failure of the party seeking relief to prosecute. The court's decision to dismiss for failure to prosecute will be overturned only upon a showing of abuse of discretion. Shackelton, 207 Mont. at 101, 672 P.2d at 1114-15; Cremer v. Braaten, 151 Mont. 18, 19-20, 438 P.2d 553, 554 (1968); State Savings Bank v. Albertson, 39 Mont. 414, 420-21, 102 P. 692, 694 (1909). However, because dismissal of an action is a harsh remedy, the district court's discretion is not unlimited. Courts "exist primarily to afford a forum to settle litigable matters between disputing parties." Brymerski v. City of Great Falls, 195 Mont. 428, 431-32, 636 P.2d 846, 848 (1981) (quoting Farber v. Green Shoe Mfg. Co., 596 P.2d 398 (1979)). Therefore, the district court must balance the concerns of judicial efficiency embodied in Rule 41(b), M.R.Civ.P., against a party's right to meaningful access to the judicial system. Timber Tracts, Inc. v. Fergus Elec. Coop., Inc., 231 Mont. 40, 43, 753 P.2d 854, 856 (1988).

There is no precise formula for determining when an action may properly be dismissed for failure to prosecute. Each case turns on its own particular set of circumstances, and lapse of time in

8

and of itself is insufficient to justify dismissal. Kujich v. Lillie, 127 Mont. 125, 136, 260 P.2d 383, 389 (1953).

In Shackelton, 207 Mont. at 102, 672 P.2d at 1115, we adopted the following factors from State Steamship Co. v. Philippine Air Lines, 426 F.2d 803, 805 (9th Cir. 1970), to be used in considering whether the district court abused its discretion by dismissing a suit for failure to prosecute:

> (1) [T]he appellant's right to a hearing on its claim, (2) the impairment of the appellees' defenses presumed from the unreasonable delay, (3) the wholesome policy of the law in favor of the prompt disposition of law suits, and (4) the duty of the appellant to proceed with due diligence.

In Cox v. Myllymaki, 231 Mont. 320, 322, 752 P.2d 1093, 1094, (1988), we restated and somewhat expanded the Shackelton factors. Quoting Hamilton v. Neptune Orient Lines, Ltd., 811 F.2d 498, 499 (9th Cir. 1987), we enumerated the following considerations:

> [T]he plaintiff's diligence, the trial court's need to manage its docket, the danger of prejudice to the party suffering the delay, the availability of alternate sanctions, and the existence of warning to the party occasioning the delay.

Taking the Shackelton and Cox factors together, the elements this Court will consider when determining whether a district court has abused its discretion by dismissing an action for failure to prosecute are: 1) the plaintiff's diligence in prosecuting his claims; 2) the prejudice to the defense caused by the plaintiff's delay; 3) the availability of alternate sanctions; and 4) the existence of a warning to plaintiff that his case is in danger of dismissal. These elements will be considered in light of the competing concerns of the plaintiff's right to a hearing on the

9

merits, the trial court's need to manage its docket and the general policy in favor of prompt disposition of lawsuits.

The party moving for dismissal must demonstrate that the plaintiff has delayed action on the claim for an unreasonable period of time. Once an unreasonable delay has been shown, the plaintiff must proffer a reasonable excuse for the delay. Calaway v. Jones, 177 Mont. 516, 520, 582 P.2d 756, 758 (1978). An unreasonable delay raises a presumption of prejudice to the defendant, and the defendant is under no obligation to demonstrate injury from the delay. Shackelton, 207 Mont. at 102, 672 P.2d at 1115. However, if the plaintiff comes forward with a reasonable excuse for the delay, the burden shifts to the defendant to show actual prejudice. "A reasonable excuse is one that is not frivolous '. . . where a plaintiff has come forth with an excuse for his delay that is anything but frivolous, the burden of production shifts to the defendant to show at least some actual prejudice.'" Cox, 231 Mont. at 322, 752 P.2d at 1094 (quoting Nealey v. Transportacion Maritima Mexicana, S.A., 662 F.2d 1275, 1281 (9th Cir. 1980)).

In the present case, the District Court file shows an absence of any formal discovery or other substantial prosecutorial activity by plaintiffs for slightly more than two and one-half years prior to the motion for dismissal. Assuming that this period of time constituted an unreasonable delay, the plaintiffs bore the burden of showing a reasonable excuse for their failure to prosecute. At the reinstatement hearing, plaintiffs offered two reasons for their

10

failure to take any formal action during this time period. First, they had been led to believe by their attorney that further discovery efforts had been postponed due to scheduling conflicts between the three sets of attorneys involved in the case. Second, they misunderstood the scope of their lead attorney's representation. Plaintiffs assumed that Budewitz was continuing to pursue the case while they sought assistance from other law firms. Yet Budewitz apparently ceased activity on the case after October, 1988, except to respond to inquiries from other attorneys.

In past cases involving Rule 41(b) dismissals, we have held plaintiffs at least partially responsible for the inadvertence of their attorneys. Those cases may be distinguished from the action at hand. Diversified Realty, Inc. v. Holenstein, 222 Mont. 263, 721 P.2d 752 (1986), for example, involved a delay of over eight years, as well as a previous order from the court mandating plaintiffs to proceed with due diligence. The present case, on the other hand, involves a delay of only two and one-half years with no order or other warning from the court to proceed more diligently.

Timber Tracts, 231 Mont. at 44-45, 753 P.2d at 857, and its companion case, Cook v. Fergus Elec. Coop., Inc., 235 Mont. 173, 177, 765 P.2d 1138, 1140 (1988), involved cases in which one of the plaintiffs was also an attorney whose law firm was listed as counsel of record. Under those circumstances, we refused to absolve the plaintiffs from their responsibility to move the suit to trial. In the present case, however, none of the plaintiffs are

11

attorneys, all are lay persons.

Furthermore, plaintiffs in this case did not sit on their claims while their attorney took no further action to prosecute. Rather, plaintiffs undertook what measures they could reasonably be expected to engage in as lay persons who believed they were being represented by counsel. They consulted with a financial expert to determine the value of their claims. They also conferred with other attorneys in an effort to get additional assistance with the suit.

Under the circumstances, plaintiffs offered reasonable excuses for the delay in the formal prosecution of their case. Because plaintiffs' reasons were not frivolous, the burden shifted to defendants to demonstrate that they were actually prejudiced by the delay.

Actual prejudice for the purpose of a Rule 41(b) dismissal for failure to prosecute means an impairment of the ability to defend due to the plaintiff's delay in diligently pursuing the action. An impairment of defense usually involves the loss of evidence or witnesses. In Brymerski, 195 Mont. at 432, 636 P.2d at 849, we held that the defendant had not been prejudiced since most of the witnesses were still available to testify and records and files continued to be available as evidence. Similarly, in Kujich, 127 Mont. at 135-36, 260 P.2d at 388-89, we noted that no prejudice existed when the witnesses remained available and no crucial evidence was lost as a result of the delay. On the other hand, in Chicago Title Ins. Co. v. Wheat, 216 Mont. 98, 101, 699 P.2d 597,

599 (1985), we found actual prejudice because "[w]itnesses have moved or forgotten the facts, records and files have been lost, one of [defendants'] former attorneys has given up the practice of law, and [a defendant] has changed ownership."

In the present case, defendants do not allege that their defense of the action has been impaired by plaintiffs' delay in prosecution. They do not claim that witnesses are no longer available or that evidence no longer exists. Rather, the only prejudice they allege is that they have been forced to list the lawsuit as a contingent liability on their financial statements. While we do not doubt that this constitutes a hardship for defendants, we recognize that it is a hardship suffered by many parties involved in litigation. It does not constitute prejudice for purposes of a Rule 41(b) dismissal for failure to prosecute.

Because plaintiffs proferred a reasonable excuse for their delay in prosecuting the lawsuit and defendants were unable to demonstrate that they had been actually prejudiced by the delay, we hold that the trial court abused its discretion in dismissing plaintiffs' complaint for failure to prosecute. We therefore need not discuss the court's failure to consider the availability of alternate sanctions or the complete absence of a warning to plaintiffs that the action was in danger of being dismissed.

Reversed and remanded for further proceedings consistent with this Opinion.

William E. Hunt
Justice

13

We Concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_John C. Sheehy_

_R. C. McDonough_

Justices

14

Justice Fred J. Weber specially concurs as follows:

I do agree with the reversal as required under the majority opinion. In reaching that conclusion, however, I have also considered other factors upon which the majority did not rely.

In particular, I note the complete absence of a warning to the plaintiffs that their action was in danger of being dismissed. Under the facts of this case, it would have been entirely appropriate to give a warning, granting an appropriate period of time in which to actually prosecute the lawsuit. The dismissal and giving of 30 days to respond does not appear to meet the test under these circumstances.

In addition, the record indicates the District Court did not consider any alternate sanctions. As an example, it would have been readily possible in this case to require of the plaintiffs that they be prepared to try the case in a period of time such as 3 months or 6 months and in the event of their failure to be totally prepared for trial, that the case then would be dismissed. Furthermore, under Rule 16, M.R.Civ.P., the District Court has the ability to manage and control the course of this litigation as well as consider appropriate sanctions when discovery is not completed or answered as required.

The majority accepts at face value the testimony of the plaintiffs with regard to their explanation of their actions during the one and one-half years prior to dismissal. I note the testimony contradicts the affidavit of Mr. Budewitz, their attorney. As a result, it is certainly possible that the District

Court found their testimony not to be believable. Where the plaintiffs had picked up all of the files and were aware that the files had never been returned to Mr. Budewitz, it is difficult to conclude that they expected Mr. Budewitz to continue as attorney.

For me a controlling factor is stated in Cox v. Myllymaki (1988), 231 Mont. 320, 322, 752 P.2d 1093, 1094, where the Court stated that a judge's discretion is not unlimited and it must be remembered that courts "exist primarily to afford a forum to settle litigable matters between disputing parties (citations omitted)." I find the facts to be very close in this case, but for these reasons I conclude that we may properly say that there was an abuse of discretion in the dismissal of plaintiffs' complaint.

_____
                        Justice

Justice Diane G. Barz concurs in the foregoing special concurrence.

_____
                        Justice

16