No. 98-517

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 105N

JOHN ROBERTSON,

Plaintiff,

v.

SOUP CREEK RANCH, INC., an inactive Montana corporation, KATHY NELSON,

in her capacity as president and individually; and UNITED STATES OF AMERICA,

Defendants.

ROBERT LEE BROCKETT, alias RONALD L. BADER,

Plaintiff, Counterclaimant, and Appellant,

v.

SOUP CREEK RANCH, INC., a Montana corporation,

Defendant, Counterclaimant, Third-Party Plaintiff, and Respondent,

LAKE COUNTY, a political subdivision of the State of Montana,

by and through the Lake County Treasurer,

Defendant,

KATHY M. NELSON,

Defendant, Counterclaimant, Third-Party Plaintiff, and Respondent,

and all other persons, known or unknown, claiming, or who may claim any right,

title, estate or interest in or lien or encumbrance upon the real property described in

the Complaint and subject to this action for foreclosure,

Defendants,

HASH, O'BRIEN & BARTLETT, a partnership consisting of Charles H. Hash, Kenneth E.

O'Brien, James C. Bartlett, and Mark Hash; and JAMES C. BARTLETT, individually,

No

Third-Party Defendants and Respondents.

APPEAL FROM: District Court of the Twentieth Judicial District,

In and for the County of Lake,

The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Wilmer W. Windham, Attorney at Law; Polson, Montana

John Hud, Attorney at Law; Bozeman Montana

(for Appellant Bader)

For Respondents:

Ronald B. MacDonald; Datsopoulos, MacDonald & Lind, P.C.;

Missoula, Montana (for Respondents Soup Creek Ranch and Nelson)

William Evan Jones and Lucy T. France; Garlington, Lohn &

Robinson, P.C.; Missoula, Montana

No

(for Respondents Hash, O'Brien & Bartlett and James C. Bartlett)

Submitted on Briefs: December 30, 1998

Decided: May 18, 1999

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

**¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

**¶2. This case commenced in March 1990, when the Flathead Bank of Bigfork filed a foreclosure action in the Twentieth Judicial District Court, Lake County, against Soup Creek Ranch, Inc. (SCRI), a Montana corporation; Kathy Nelson, as president and sole shareholder of SCRI; and Ronald Bader. Bader filed a cross-claim against SCRI and Nelson asserting that he had a life estate in the ranch which was being foreclosed. Nelson filed a third-party complaint against the law firm of Hash, O'Brien & Bartlett, a partnership with its principal place of business in Kalispell, and attorney James C. Bartlett, individually, alleging that Bartlett breached a**

fiduciary responsibility and had a conflict of interest when he drafted real estate documents on her behalf that ostensibly granted Bader a life estate. John Robertson became involved in this matter because he lent money to Bader so that Bader could purchase the bank's mortgage and its claims against SCRI and Nelson. After Bader assumed the bank's position as plaintiff in the underlying foreclosure action, he then assigned his claims in the Soup Creek Ranch to Robertson, and Robertson eventually assumed the position as plaintiff.

¶3. The matter before us deals with SCRI and Nelson's counterclaim against Bader in which they assert that Bader's alleged life estate should be declared null and void on the basis of fraud, misrepresentation, and deceptive business practices, as well as a lack of consideration and mutual consent. The District Court imposed a sanction of default against Bader and entered judgment against him on SCRI and Nelson's counterclaim. According to the District Court, the sanction was justified because Bader refused to comply with the court's scheduling order regarding discovery and the preparation of the pretrial order. Bader appeals from the default judgment, as well as the District Court's findings of fact and conclusions of law which declared his life estate null and void, and dismissed a cross-claim he brought against Hash, O'Brien & Bartlett and attorney Bartlett, individually, for contribution. We affirm the District Court.

¶4. The following issues are dispositive on appeal:

¶5. 1. Did the District Court abuse its discretion when it sanctioned Bader with a default judgment?

¶6. 2. Did Nelson's subsequent affidavit support the District Court's decision to declare Bader's life estate null and void?

## FACTUAL BACKGROUND

¶7. Robert Lee Brockett was a fugitive from justice who adopted the alias Ronald L. Bader. Bader purchased the Soup Creek Ranch in 1976. Because of legal concerns, he transferred title in the ranch to a friend, Gilbert Rodriguez. Subsequent to the transfer, Rodriguez filed for bankruptcy which subjected the property to the jurisdiction of the federal bankruptcy court. Bader was successful, however, in convincing the bankruptcy trustee that he was the true owner of the property and

that his previous transfer to Rodriguez was a fiction to obscure his interest in the ranch. In order to retain the ranch, the bankruptcy court required Bader to pay the trustee the sum of $50,000. Apparently without sufficient funds to make the payment, Bader entered into an agreement with his companion, Kathy Nelson, whereby Nelson purchased the Soup Creek Ranch in her name and Bader managed it. Nelson and Bader carried on a relationship and lived together at the ranch. Eventually, however, Nelson and Bader's relationship ended.

¶8. The procedural history of this case is complex and a detailed recitation is not necessary or germane to the issues raised in this appeal. Suffice it to say that the parties filed various counterclaims, cross-claims, and third-party complaints against each other as the litigation progressed. It is important to note that the complaint which initiated this litigation was filed by the Flathead Bank of Bigfork in March 1990. On January 16, 1991, the District Court informed the parties that a notice of lis pendens had been filed by the United States government in a federal court proceeding. An action was filed *in rem* against the ranch, seeking forfeiture of the property as a result of alleged drug activities involving Bader. This action effectively stayed the proceedings at issue for three years.

¶9. After the three-year hiatus, the parties again pursued their claims. On September 7, 1993, Bader assigned his interest in the bank note, mortgage, and claims to Robertson as security for the money he owed Robertson. However, he made the assignment junior to his interest in the life estate. In February 1994, Robertson filed a separate foreclosure action against SCRI and Nelson. Robertson's case was consolidated with the existing case. SCRI and Nelson settled with Robertson and agreed to stay foreclosure proceedings until a final judgment was entered on Nelson's counterclaim concerning Bader's life estate.

¶10. More than seven years after the litigation commenced, the District Court, on August 1, 1997, entered a scheduling order designed to resolve the validity of Bader's life estate. All discovery was to be completed by the parties before March 15, 1998; plaintiff's proposed pretrial order was to be served on the defendants by May 5, 1998; the final pretrial order was to be submitted to the court by May 19, 1998; and a trial was scheduled for May 26, 1998. The District Court alerted everyone that deadlines would be strictly followed. Thus, the scheduling order expressly stated that there would be no changes absent a showing of good cause in writing and supported by affidavit.

¶11. Bader was represented by three different lawyers at various times from the time this litigation began through August 1997. In late August 1997, his lawyer who was representing him withdrew from the matter because Bader wished to file a claim against attorney Bartlett and the lawyer felt he had a conflict. Shortly thereafter, Bader began appearing *pro se*. Representing himself, Bader proceeded to file pleadings on his own behalf, many of which were quite sophisticated. He also filed an action *pro se* against attorney Bartlett. He then moved to consolidate the action to this cause. On December 2, 1997, Bader filed his expert witness list which he amended the next day.

¶12. Bader's deposition, noticed on January 28, 1998, was to take place on March 2, 1998. On February 23, 1998, Bader requested an extension of discovery and asked that his March 2, 1998, deposition be rescheduled because he was in the process of retaining counsel; his fourth to represent him in this litigation. While his motion to extend discovery was pending, Bader failed to appear at the stated time for his deposition. When he did appear two hours late, he refused to be sworn or produce the documents that were requested in the deposition notice. Bader insisted on being present *pro se* for the depositions of attorney Bartlett and Nelson, however, which were scheduled on the same day.

¶13. On March 10, 1998, John Hud, a licensed attorney in Montana and California, appeared as counsel of record for Bader. On March 12, 1998, Hud filed a brief in support of Bader's previously filed motion to extend discovery. Bader's motion to extend discovery was denied.

¶14. SCRI and Nelson moved for Rule 37(d), M.R.Civ.P., sanctions against Bader based on Bader's failure to timely appear at his March 2, 1998, deposition. The District Court sanctioned Bader and ordered him to pay attorney fees and costs incurred by all counsel who attended the March 2, 1998, deposition in addition to any future fees and expenses associated with his rescheduled deposition.

¶15. On April 10, 1998, Hud moved to continue the trial date because of his busy California trial schedule. In his motion, he stated that it would be impossible for him to adequately prepare for trial without more time because he already was committed to other trials in California that would require his attention through April and into May. He recognized that without a reasonable continuance he "could become a potential Defendant in a future malpractice action."

¶16. In a May 5, 1998, order the District Court denied the motion for a trial continuance, noting that the case had been in litigation for over eight years and that although Bader was without counsel for a period of time, the court concluded that he was not prejudiced because he had demonstrated legal sophistication in representing himself. The court concluded that Bader's selection of an attorney whose schedule conflicted with the trial date, combined with Bader's late motion to postpone the trial, was an attempt to avoid a resolution of the matter. Bader next attempted to overturn the District Court's denial of a continuance by filing a petition for writ of supervisory control with this Court. We denied his petition.

¶17. On May 11, 1998, the District Court issued an order requiring the filing of a pretrial order by May 19, 1998, and reaffirmed the firm trial setting of May 26, 1998. Also on May 11, 1998, Hud, on Bader's behalf, filed a document entitled, "Plaintiff, Counterclaimant Ronald L. Bader's Explanation for Noncompliance with Rule 5 Uniform District Court Rules." The document essentially informed the court that neither Bader nor his attorney were able to prepare and serve a pretrial order as required by the District Court's order.

¶18. On May 14, 1998, SCRI and Nelson requested the court to reconsider its prior request for sanctions and to default Bader for his refusal to assist in the preparation of the pretrial order, pursuant to Rule 16(f), M.R.Civ.P., explaining that monetary sanctions are insufficient to remedy a situation where a client and his attorney simply ignore scheduling and discovery orders. In the interest of a timely ruling, the District Court requested Bader and Hud to fax their response. On the morning of the trial, May 26, 1998, the District Court entered an order imposing the sanction of a default judgment against Bader. The District Court concluded that the severity of the sanction was necessary based on Bader's unwillingness to assist in the preparation of the case for a timely trial resolution.

¶19. The District Court thereafter permitted SCRI to file an affidavit, upon which the court based its findings of fact and conclusions of law in favor of SCRI and Nelson's counterclaim on June 4, 1998. The District Court declared Bader's life estate null and void. In a separate June 4, 1998, judgment, the District Court dismissed Bader's claim for contribution against Hash, O'Brien and Bartlett and attorney Bartlett on the basis of the default judgment.

¶20. Bader appeals the District Court's May 26, 1998, entry of default judgment, and

both June 4, 1998, judgments.

## STANDARD OF REVIEW

¶21. This Court has consistently held that the imposition of sanctions lies within the broad discretion of the district court. Our standard of review of sanctions imposed for a lack of compliance with discovery procedures under Rule 37 is whether the district court abused its discretion. *See McKenzie v. Scheeler* (1997), 285 Mont. 500, 506, 949 P.2d 1168, 1172; *Smith v. Butte-Silver Bow County* (1996), 276 Mont. 329, 333, 916 P.2d 91, 93. Similarly, we apply an abuse of discretion standard when we review a district court's imposition of sanctions under Rule 16. *See McKenzie*, 285 Mont. at 507, 949 P.2d at 1172; *Eastern Livestock Co., Inc. v. O'Neal* (1997), 285 Mont. 90, 97, 945 P.2d 931, 935-36. Simply stated, the trial judge "is in the best position to know whether parties are disregarding the rights of opposing parties in the course of litigation and which sanctions for such conduct are most appropriate." *McKenzie*, 285 Mont. at 506, 949 P.2d at 1172; *see also Smith*, 276 Mont. at 332, 916 P.2d at 93 (quoting *Dassori v. Roy Stanley Chevrolet Co.* (1986), 224 Mont. 178, 180, 728 P.2d 430, 431).

¶22. We review a district court's findings of fact and conclusions of law on sanctions to ascertain whether they are supported by substantial credible evidence. *See Morris v. Big Sky Thoroughbred Farms, Inc.*, 1998 MT 229, ¶ 20, 965 P.2d 890, ¶ 20, 55 St. Rep. 957, ¶ 20; *Searight v. Cimino* (1988), 230 Mont. 96, 101, 748 P.2d 948, 950-51.

## DISCUSSION

¶23. In recent cases involving sanctions for discovery abuse or for failure to comply with a scheduling order, we have focused on two concerns: whether there was an actual abuse of or failure to comply with the judicial process, and whether the severity of the sanction was appropriate. *See McKenzie*, 285 Mont. 500, 949 P.2d 1168; *Smith*, 276 Mont. 329, 916 P.2d 91. When considering the appropriateness of the sanction, we stated that "[t]he extent of the 'consequences' imposed by a district court . . . should relate to the extent and nature of the actual . . . abuse and the extent of the prejudice to the opposing party which result[ed] therefrom." *McKenzie*, 285 Mont. at 515, 949 P.2d at 1177; *Smith*, 276 Mont. at 339-40, 916 P.2d at 97.

¶24. In the case *sub judice*, the District Court recognized our recent pronouncement

in *McKenzie* and then analyzed the issues along guidelines set forth in several federal court opinions. The District Court considered five factors: (1) its interest in expeditiously resolving the case; (2) the degree of prejudice caused by Bader's actions; (3) whether Bader had sufficient warning of a sanction; (4) Bader's and Hud's culpability; and (5) the availability of lesser sanctions. *Cf. Jones v. Thomas* (10th Cir. 1993), 996 F.2d 261, 264; *Thompson v. Housing Authority of City of Los Angeles* (9th Cir. 1986), 782 F.2d 829, 832, *cert. denied* (1986), 479 U.S. 829, 107 S. Ct. 112, 93 L. Ed. 2d 60; *Henderson v. Duncan* (9th Cir. 1986), 779 F.2d 1421, 1423. We have applied similar factors when determining whether a district court abused its discretion by dismissing an action for a failure to prosecute, pursuant to Rule 41(b), M.R.Civ.P. *See Becky v. Norwest Bank Dillon, N.A.* (1990), 245 Mont. 1, 8, 798 P.2d 1011, 1015. In cases involving a discovery abuse, pursuant to Rule 37(d), M.R.Civ.P., or a failure to comply with a scheduling order, pursuant to Rule 16(f), M.R.Civ.P., we have stated that the proper standard of review is whether the District Court abused its discretion. *See McKenzie*, 285 Mont. at 506-07, 949 P.2d at 1172. Here, the District Court determined that Bader refused to comply with the court's scheduling order and refused to assist in the preparation of the pretrial order. On that basis, the District Court entered Bader's default. We review the court's determination of Bader's noncompliance and the propriety of its default sanction.

## ISSUE 1

¶25. Did the District Court abuse its discretion when it sanctioned Bader with a default judgment?

¶26. The imposition of sanctions for failure to comply with the rules of discovery are regarded with favor. *See McKenzie*, 285 Mont. at 506, 949 P.2d at 1171-72; *Huffine v. Boylan* (1989), 239 Mont. 515, 517, 782 P.2d 77, 78 (citing *Owen v. F.A. Buttrey Co.* (1981), 192 Mont. 274, 279, 627 P.2d 1233, 1236). We have stated that an abuse of discovery procedures which results in needless delay of a case should not be dealt with leniently. *See McKenzie*, 285 Mont. at 506, 949 P.2d at 1171; *Smith*, 276 Mont. at 332, 916 P.2d at 92-93 (citing *Owen*, 192 Mont. at 277-78, 627 P.2d at 1235). The purpose of sanctions allowed in Rule 37, M.R.Civ.P., is to deter parties from being unresponsive to the judicial process. *See McKenzie*, 285 Mont. at 508, 949 P.2d at 1172; *Huffine*, 239 Mont. at 517, 782 P.2d at 78 (quoting *Landauer v. Kehrwald* (1987), 225 Mont. 322, 325, 732 P.2d 839, 841).

¶27. A cursory review of the caption of this case suggests its complexity; this was a case with multiple parties, represented by multiple attorneys, which included numerous third-party complaints and counterclaims. On August 1, 1997, after the matter had been pending for over seven years, the District Court recognized the need to take control and set forth a scheduling order which in certain terms made it clear to the parties and their counsel that a trial would take place on May 26, 1998. The court set aside ten days for a jury trial in another judicial district.

¶28. In August 1997, Bader's counsel withdrew and Bader began representing himself *pro se.* This was apparently the third time Bader changed attorneys. Bader, obviously well versed in legal matters, proceeded on with the litigation, filing briefs and pleadings, and initiating another law suit, all done *pro se.* Early in 1998, with the trial approaching, Bader's deposition was noticed. Bader then let it be known that he wanted to be represented again by counsel. When his deposition was scheduled, Bader failed to appear at the stated time. However, when he finally did appear two hours late, *pro se*, he refused to be sworn or examined. He also failed to produce the documents which were included in the deposition notice.

¶29. When Bader's counsel finally entered an appearance, he essentially took the position that his schedule took precedence over the District Court's and refused to participate in the preparation of a pretrial order. Hud was clearly on notice at the time he entered his appearance that the District Court intended to strictly abide by the scheduling order; the order so stated.

¶30. Bader argues that the District Court assumed that his lack of response to the judicial process was purposeful when, in fact: he contacted several attorneys who would not represent him, leaving Hud as his only choice for legal representation; and when he did everything he could to keep up with the court's schedule.

¶31. In any decision to impose a sanction, the trial judge must evaluate a litigant's conduct and decide at what point it becomes sanctionable. The District Court is in a better position to consider the circumstances and decide questions of good faith in such situations. *See McKenzie*, 285 Mont. at 515, 949 P.2d at 1177. Here the District Court determined that there was no hard evidence in the record of Bader's alleged attempts to obtain different counsel. We conclude that the District Court did not abuse its discretion.

¶32. Next, Bader asserts that the District Court failed to provide him a direct warning of the sanction of default. Included in the list of factors to consider for a sanction based on a failure to prosecute is whether the District Court warned the appellant that the case was in danger of dismissal. *See Becky*, 245 Mont. at 8, 798 P.2d at 1015. However, in *McKenzie*, 285 Mont. at 511-12, 949 P.2d at 1175, we recognized that Rule 16(f), M.R.Civ.P., does not require that a party be given notice before a sanction is made for a failure to obey a scheduling order. Similarly, Rules 37 (d) and 37(b)(2)(C), M.R.Civ.P., do not require notice. Nonetheless, in *Smith*, 276 Mont. at 340, 916 P.2d at 97, we declared that where a court expressly warns of the consequences to follow from a party's failure to comply, the court should impose sanctions accordingly. We were concerned in *Smith* that the District Court imposed consequences much more severe than those of which it had expressly warned. *See Smith*, 276 Mont. at 339, 916 P.2d at 97.

¶33. Notwithstanding whether a notice requirement exists, we conclude that Bader received sufficient warning that he could be subject to a default judgment for his failure to comply with the scheduling order. Given the District Court's May 5, 1998, order denying Bader's motion for a continuance and its May 11, 1998, order requiring him a second time to file a pretrial order, Bader had notice that the court fully expected him and his attorney to proceed to trial as scheduled. Finally, when the District Court imposed a monetary sanction against Bader, then requested Bader and his attorney to respond to Soup Creek's motion to reconsider sanctions, Bader was afforded an opportunity to modify his position and assist in the trial preparation.

¶34. Bader did not modify his position throughout the course of events and, as a result, his actions caused prejudice to the other parties. The District Court noted that Bader failed to disclose the contents of important documents, confused the legal issues and hindered the opposing parties' abilities to develop an effective trial strategy. The District Court's order, which scheduled the discovery process, was meant to secure to all parties a "just, speedy, and inexpensive" determination of the action, for which Montana's Rules of Civil Procedure are designed. *See, e.g.,* Rule 1, M.R.Civ.P.; *Owen*, 192 Mont. at 279, 627 P.2d at 1236. By violating the District Court's scheduling order, Bader violated the rights of the opposing parties. We conclude that Bader's refusal to be sworn and testify, and his refusal to produce documents at his deposition was a direct affront to the authority of the court and deprived the parties of benefits of discovery to which they were entitled.

¶35. Bader relies on *Becky*, 245 Mont. at 8, 798 P.2d at 1015, in support of his argument that he did not violate the opposing parties' rights because he did not cause an unreasonable delay to the judicial process and because his reasons for needing more time were not frivolous. However, as we noted in *Becky*, 245 Mont. at 8, 798 P.2d at 1015, "[a]n unreasonable delay raises a presumption of prejudice to the defendant." In *McKenzie*, 285 Mont. at 516, 949 P.2d at 1177, we reiterated that "[w]hen a party's failure to comply with discovery procedures effectively halts the discovery process, it results in impermissible prejudice to the opposing party."

¶36. In summary, we conclude that the District Court did not abuse its discretion when it sanctioned Bader with a default judgment. We have recognized that "[t]he trial judge is in the best position to know which parties callously disregard the rights of their opponents and other litigants seeking their day in court," and that "[t]he trial judge is also in the best position to determine which sanction is the most appropriate." *Eastern Livestock*, 285 Mont. at 98-99, 945 P.2d at 936-37 (quoting *Eisenmenger v. Ethicon, Inc.* (1994), 264 Mont. 393, 402-03, 871 P.2d 1313, 1319, *cert. denied* (1994), 513 U.S. 919, 115 S. Ct. 298, 130 L. Ed. 2d 211). The District Court appropriately recognized that any other sanction would have enabled Bader to enjoy the status quo, benefit from the disregard of the court's order, cause considerable turmoil with the court's and opposing counsels' schedules, and would have added to the extensive burden this case caused on all the parties involved. The District Court had no alternatives, given the continued nature of Bader's conduct so close to the date set for trial.

ISSUE 2

¶37. Did Nelson's subsequent affidavit support the District Court's decision to declare Bader's life estate null and void?

¶38. The District Court considered Nelson's affidavit, among other documents, in making its findings of fact and conclusions of law. The court concluded that Bader's life estate was a result of fraud and misrepresentation, and was without sufficient consideration. As a result, the District Court declared Bader's life estate null and void, dismissed all of Bader's claims against SCRI and Nelson with prejudice, and reserved the issue of attorney fees and costs to be awarded to SCRI and Nelson.

¶39. On appeal, Bader argues that Nelson's affidavit failed to establish the nine

elements of fraud by a preponderance of the evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity, or ignorance of the truth; (5) the speaker's intent that it should be acted upon by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of falsity; (7) the hearer's reliance upon its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury. *See Cartwright v. Equitable Life Assurance Soc'y of U.S.* (1996), 276 Mont. 1, 23, 914 P.2d 976, 990.

¶40. It is important to note that at this juncture in the proceeding, Bader's default was entered and he was unable to contest any material issues. We conclude that the District Court's findings of fact and conclusions of law are supported in the record presented, including the Nelson affidavit. Nelson, by affidavit, established that Bader employed a scheme to hide his identity and interest in the Soup Creek Ranch to try to avoid a forfeiture on the property as a result of his drug conviction. Not only did Bader hide his true identity from others, he hid it from Nelson. Bader did not inform Nelson of his drug conviction or the fact that he used his name, Bader, as an alias. Nelson further established that neither Bader nor Bartlett informed her of the purpose of the real estate documents she signed, namely the documents that allegedly granted Bader a life estate. In addition, Nelson was prepared to set forth expert testimony that these documents were highly unusual and did not conform to standard real estate practices. We conclude that there was substantial credible evidence to determine that Bader made a material misrepresentation of the facts designed to induce Nelson to purchase the Soup Creek Ranch for his benefit. Bader had knowledge of his misrepresentation and intended for Nelson to act upon it. Nelson was unaware of the truth and would have suffered significant financial injury.

¶41. Bader argues that the damages entered against him were inappropriate and excessive. Bader suggests that he was willing to restore to Nelson any unreimbursed amount she invested in the Soup Creek Ranch. He further suggests that there was little amount, if any, that Nelson had not already been reimbursed in her investment given the tax benefits she received and the reduced purchase price she paid, and that by being awarded full ownership of the Soup Creek Ranch she gained a windfall of approximately $500,000. Bader makes his calculation based on numbers he submitted to the District Court after it entered its findings of fact and conclusions of law. Therefore, the District Court did not consider these numbers, nor do we here. We conclude that the District Court did not err in its award of damages.

¶42. Bader next contends that since SCRI was involuntarily dissolved in 1991, pursuant to § 35-6-104, MCA, it cannot receive the benefit of the court's judgment. However, since Bader had the opportunity to argue this before the District Court in the course of litigation, but failed to do so, we cannot consider it here. We will not address an issue presented for the first time on appeal. *See Rasmussen v. Lee* (1996), 276 Mont. 84, 88, 916 P.2d 98, 100.

¶43. Bader also contends the District Court's judgment violated his substantive due process rights based on the common law that arbitrary, capricious, or unreasonable governmental or judicial action is a violation of due process. He cites the United States Constitution, and Article II, Section 17, of the Montana Constitution, to implicate a state court's action. As we previously stated, however, we conclude that the District Court's award of damages was appropriate. Therefore, we further conclude that Bader suffered no deprivation of his state and federal constitutional rights.

¶44. Although Bader does not present a specific issue as to the District Court's separate June 4, 1998, judgment in which it dismissed his claim for contribution against Hash, O'Brien & Bartlett and attorney Bartlett on the basis of the default judgment, he refers to it in his argument on appeal. He states in his brief that the District Court had no justification for a dismissal of his claim against the attorney defendants. Certainly the attorney defendants were similarly impacted by Bader's refusal to abide by the District Court's orders. Thus, we affirm the default judgment entered against Bader and in favor of the attorney defendants and the District Court's findings of fact and conclusions of law as to these defendants as well.

¶45. In conclusion, we affirm the District Court's order entering a default judgement and its findings of fact and conclusions of law. We remand for further proceedings.

/S/ JIM REGNIER

We Concur:

No

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER