FILED

February 10 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0133

DA 14-0133

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 38

A.M. WELLES, INC., and the STATE
OF MONTANA,

        Plaintiffs and Appellants,

    v.

MONTANA MATERIALS, INC., a Montana
corporation, d/b/a L.S. Jensen & Sons, Inc.,
and/or d/b/a L.S. Jensen Construction & Paving,
and/or d/b/a Jensen Paving, Inc.; RSJ, INC., a
Montana corporation, d/b/a Jensen Paving Co.,
and/or d/b/a Jensen Paving Company; GLJ,
INC., a Montana corporation, d/b/a L.S. Jensen
& Sons, Inc., and/or d/b/a L.S. Jensen
Construction and Paving; LIBERTY MUTUAL
FIRE INSURANCE COMPANY, a foreign
corporation; ALPINE CONSTRUCTION, INC.,
a Montana corporation; and JOHN DOES I
THROUGH V,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and For the County of Missoula, Cause No. DV 03-0266
                Honorable Karen S. Townsend, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Dan L. Spoon; Bryan L. Spoon, Spoon Gordon Ballew, Missoula,
                Montana (for A.M. Welles, Inc.)

                Calvin J. Stacey, Stacey & Funyak, Billings, Montana
                (for State of Montana)

        For Appellees:

                Steven S. Carey, Carey Law Firm, Missoula, Montana

Submitted on Briefs:  December 17, 2014
Decided:  February 10, 2015

Filed:

_____
Clerk

2

Justice Beth Baker delivered the Opinion of the Court.

¶1     A.M. Welles, Inc., (Welles) and the State of Montana appeal dispositive orders from the Fourth Judicial District Court, Missoula County.  The following issues resolve the appeals:

> *1.     Whether the District Court correctly denied summary judgment to Welles.*
>
> *2.     Whether the District Court abused its discretion by dismissing the State's action against Liberty Mutual Fire Ins. Co. for failure to prosecute.*

We conclude that Welles is entitled to summary judgment in its action against Jensen, and that the State's action against Liberty should be reinstated.  We vacate and remand.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2     This case arises out of a highway paving project conducted near Ennis in 2000.  The State contracted the job to Welles, which in turn sub-contracted parts of the job to Montana Materials, Inc., RSJ, Inc., and GLJ, Inc. (collectively, "Jensen").  The State and Welles insured the job through Liberty Mutual Fire Insurance Co. (Liberty). On September 30, 2000, Jensen applied primer (oil) and blotter (a sand-like substance) to the road.  That night, a storm struck, causing the primer to emulsify in rainwater.  The oil splashed onto passing vehicles, causing about $600,000 in damage.

¶3     The vehicle owners brought claims against the State, which the State paid.  Consistent with the general contract, Welles reimbursed the State for what it paid to the vehicle owners.  The State sued Liberty, seeking indemnification under its insurance contract for the costs that Welles did not cover; Welles sued Jensen, seeking indemnification under the subcontract.

3

¶4 Both Welles and Jensen moved for summary judgment on Welles's indemnification claim against Jensen. The District Court denied Welles's motion on April 24, 2008, and granted Jensen's motion on January 25, 2010. In 2012, Liberty moved to dismiss the State's action against it for failure to prosecute. On January 24, 2014, the court granted the motion and dismissed the State's action. In February 2014, the court entered a final judgment. The State appeals the dismissal and Welles appeals the summary judgment orders.

## STANDARDS OF REVIEW

¶5 We review summary judgment orders de novo. *Albert v. City of Billings*, 2012 MT 159, ¶ 15, 365 Mont. 454, 282 P.3d 704. Summary judgment is appropriate when the moving party demonstrates the absence of a genuine issue of material fact and the entitlement to judgment as a matter of law. M. R. Civ. P. 56(c); *Albert*, ¶ 15. We review a dismissal for failure to prosecute to determine whether the district court abused its discretion. *Westland v. Weinmeister*, 259 Mont. 412, 415, 856 P.2d 1374, 1376 (1993). We will vacate the dismissal if, after reviewing the record, we are left with the "definite and firm conviction that the district court committed a clear error in weighing the relevant factors." *Doug Johns Real Estate, Inc. v. Banta*, 246 Mont. 295, 298, 805 P.2d 1301, 1303 (1990).

## DISCUSSION

¶6 *1. Whether the District Court correctly denied summary judgment to Welles.*

¶7 The contract between Welles and Jensen includes the following indemnity clause:

The Subcontractor shall indemnify the Contractor against and save it harmless from any and all claims, suits or liability for injuries to property, injuries to persons including death, and from any other claims, suits or liability *on account of any act or omission* of the Subcontractor, or any of his officers, agents, employees or servant[s].

(Emphasis supplied). The District Court interpreted this clause to require Jensen to indemnify Welles for foreseeable losses resulting from Jensen's negligent or wrongful conduct. The court determined that Welles failed to raise a triable dispute about whether Jensen acted negligently when it applied the primer. The court therefore denied Welles's motion for summary judgment.

¶8 The role of a court interpreting a contract provision is to ascertain and effectuate the parties' mutual intentions. Section 28-3-301, MCA; *Whary v. Plum Creek Timberlands, L.P.*, 2014 MT 71, ¶ 10, 374 Mont. 266, 320 P.3d 973. The clear and explicit language of the contract reflects the parties' intentions and controls a court's interpretation. Section 28-3-303, MCA; *Whary*, ¶ 10. To the extent that there is ambiguity, indemnity clauses generally should be "liberally construed in favor of the party intended to be indemnified." *Lesofski v. Ravalli Cnty. Elect. Coop. Inc.*, 151 Mont. 104, 107, 439 P.2d 370, 371 (1968).

¶9 Welles argues that the District Court erred by interpreting the indemnity clause to require negligent or wrongful conduct. Welles directs the Court's attention to cases in which other courts interpreted similar indemnity clauses and did not require proof of negligence or wrongdoing.

¶10 In *Fairbanks North Star Borough v. Roen Design Ass'n., Inc.*, 727 P.2d 758 (Alaska 1986), the Alaska Supreme Court interpreted a clause in which a contractor

promised to indemnify a principal for particular losses "incurred for or on account of injuries or damages to persons or property as a result of any act or omission of the Contractor in the performances pursuant to this contract." *Fairbanks*, 727 P.2d at 759. The court rejected the argument that indemnity turned on whether the contractor was negligent, noting that the clause did "not limit indemnity to '*tort* liability, claims, suits or demands,' nor to 'liability claims, suits or demands . . . incurred . . . as a result of any *negligent* act or omission of the Contractor.'" *Fairbanks*, 727 P.2d at 760.

¶11 Similarly, in *Cont'l Heller Corp. v. Amtech Mechanical Servs., Inc.*, 53 Cal. App. 4th 500, 61 Cal. Rptr. 2d 668 (1997), a California Court of Appeals interpreted a clause in which a subcontractor agreed to indemnify a general contractor for any loss "which arises out of or is in any way connected with the [sub-contractor's] performance of work under this Subcontract." *Heller*, 53 Cal. App. 4th at 504-05, 61 Cal. Rptr. 2d at 670. The court rejected the argument that indemnity turned on whether the contractor was negligent, noting that the contract stated that the duty to indemnify applied to "*any* acts or omissions," and not simply "willful misconduct or negligent conduct." *Heller*, 53 Cal. App. 4th at 505, 61 Cal. Rptr. 2d at 671.

¶12 What was true for the indemnity clauses in *Fairbanks* and *Heller* holds true for the indemnity clause in Welles's contract with Jensen. Jensen agreed to indemnify Welles for losses "on account of *any* act or omission" by Jensen. The clear and explicit language of the contract does not limit the duty to indemnify to negligent or wrongful acts or omissions. If that was the intention of the parties, it would have been easy for them to manifest it in the contract's language. For instance, in *Amazi v. Atl. Richfield Co.*, 249

6

Mont. 355, 816 P.2d 431 (1991), a contract required indemnification of losses "on account of damage to property [that] . . . is the result . . . of the [indemnitor's] *negligent* acts or omissions or *willful* misconduct." *Amazi*, 249 Mont. at 359, 816 P.2d at 433-34 (emphasis supplied). Unlike the parties to the contract in *Amazi*, Welles and Jensen did not include a negligence requirement in the language of their indemnity clause.

¶13 The role of a judge in construing a contract is "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-4-101, MCA; *Cortese v. Cortese*, 2008 MT 28, ¶ 10, 341 Mont. 287, 176 P.3d 1064; *see also* 14 Am. Jur. Pleading and Practice Forms *Indemnity* § 3 (2013) ("Where parties have expressly contracted with respect to the duty to indemnify, the extent of the duty must be determined from the language of the contract . . . ."). The District Court erred by inserting a negligence requirement where Welles and Jensen omitted any such requirement.

¶14 The District Court also accepted Jensen's argument that the losses in this case were not foreseeable. Again, the plain language defeats interpreting the indemnity clause to impose such a requirement. Jensen argues, however, that the indemnity clause's "on account of" language implies foreseeability.

¶15 When interpreting a contract, we give words their plain and ordinary meaning unless a technical meaning is apparent. Section 28-3-501, MCA; *Krajacich v. Great Falls Clinic, LLP*, 2012 MT 82, ¶ 17, 364 Mont. 455, 276 P.3d 922. We decline to define "on account of" as turning on the technical, legal concept of foreseeability, which derives from tort law. *See Sternhagen v. Dow Co.*, 282 Mont. 168, 176, 935 P.2d 1139, 1144

7

(1997). The ordinary meaning of "on account of" is "by reason of" or "because of." *The Compact Edition of the Oxford English Dictionary* 64 (Oxford University Press, 1971) (providing the example, "He keeps at home now, on account of his great age."). As used in the indemnity clause, "on account of" simply requires a direct causal relationship between the act or omission and the claimed loss. To the extent that there is any room for a different interpretation, we must construe the phrase in favor of Welles, the indemnitee. *Lesofski*, 151 Mont. at 107, 439 P.2d at 371.

¶16     It is undisputed that Jensen placed the primer on the road on September 30, that the rainstorm happened that night, and that the primer emulsified, splashed onto, and damaged the vehicles. There is a direct causal relationship between Jensen's act of placing primer on the road on September 30 and the damage that the primer inflicted on passing vehicles that night and the next morning. Jensen argues that the damages were "on account of" the rain. But with or without the rain, it cannot be disputed that, but for the placement of the primer on the road the preceding day, traffic would have crossed the construction area without incident. This but-for connection means that the damage to the vehicles was "on account of" Jensen's "act or omission." Accordingly, Welles is entitled to indemnification and summary judgment. We vacate the District Court's order granting summary judgment in favor of Jensen and remand for the District Court to enter judgment in favor of Welles.

8

¶17    *2. Whether the District Court abused its discretion by dismissing the State's claim against Liberty for failure to prosecute.*

¶18    M. R. Civ. P. 41(b) provides, "[I]f the plaintiff fails to prosecute . . . a defendant may move to dismiss the action or any claim against it."  "Decisions on motions to dismiss for failure to prosecute entail a careful balancing of the competing public policy interests in resolving lawsuits on the merits and encouraging prompt disposition of disputes." *Hobble-Diamond Cattle, Co. v. Triangle Irrigation Co.*, 272 Mont. 37, 40, 899 P.2d 531, 533 (1995).  Four factors bear on the propriety of dismissal: (1) the plaintiff's diligence in prosecuting the claims; (2) the prejudice to the defense caused by the delay; (3) the availability of alternative sanctions; and (4) the existence of a warning to the plaintiff that the case was in danger of dismissal. *Becky v. Nw. Bank Dillon, N.A.*, 245 Mont. 1, 12, 798 P.2d 1011, 1015 (1990).

¶19    In *Hobble-Diamond*, we weighed the dismissal factors and determined that a district court abused its discretion by granting a M. R. Civ. P. 41(b) motion to dismiss. *Hobble-Diamond*, 272 Mont. at 43, 899 P.2d at 535.  First, we noted that the evidence failed to support the District Court's conclusions that the plaintiff had been dilatory for thirty-two months and that the defendant had suffered prejudice as a result.  Rather, the record revealed that the plaintiff had been dilatory for twelve months and the defendant had not been prejudiced. *Hobble-Diamond*, 272 Mont. at 41, 899 P.2d at 534.  Because "the District Court relied on inappropriate time periods and erroneously found actual prejudice," we next gave "close consideration" to the alternative sanctions that were available. *Hobble-Diamond*, 272 Mont. at 42, 899 P.2d at 535.  Finally, we observed that

the District Court did not warn the plaintiff of the danger of dismissal. *Hobble-Diamond*, 272 Mont. at 42-43, 899 P.2d at 535. Weighing all the dismissal factors, we concluded that dismissal was improvident. *Hobble-Diamond*, 272 Mont. at 43, 899 P.2d at 535.

¶20 Here, the District Court concluded that the State failed to prosecute its case between January 25, 2010 (when the court made its last summary judgment ruling), and March 21, 2012 (when Liberty moved for dismissal), because, "following the January 25, 2010 order, the State did nothing to pursue its remaining cause of action despite repeated requests by Liberty regarding the State's intentions." The court based this conclusion on a series of letters that Liberty submitted into evidence as support for its motion to dismiss. In the first letter, dated November 11, 2010, Liberty's counsel (1) thanked the State's counsel for visiting with him "to refresh our recollections concerning this case," (2) specified a settlement offer amount, and (3) stated that Liberty looked forward to the State's response. The succeeding letters suggest that the State never responded to the settlement offer. On January 16, 2012, the State's counsel wrote that the State would respond to Liberty's settlement offer after conferring with Welles's counsel within the next thirty days, but the State never gave Liberty a response after the thirty days had passed.

¶21 The State argues that the District Court nonetheless was incorrect in concluding that the State took no action after January 2010. Indeed, Liberty's letter in November 2010 suggests that the two sides held settlement talks a short time before the letter. That a plaintiff is not filing motions or speaking in a courtroom does not necessarily mean the plaintiff is dawdling. For instance, in *Doug Johns*, letters showed that the parties

10

engaged in settlement negotiations during the supposedly dilatory period. *Doug Johns*, 246 Mont. at 298, 805 P.2d at 1304; *see also Becky*, 245 Mont. at 8-9, 798 P.2d at 1016 (noting that the plaintiff consulted financial experts and attorneys during the supposedly dilatory period). Further, we cannot charge the State with the seventeen-month delay between the filing of Liberty's motion to dismiss in April 2012 (to which the State responded) and the District Court's order dismissing the case in January 2014. The pertinent period for consideration is the seventeen months between November 2010 and April 2012 when the State failed to respond to the settlement offer or to move forward with the case.

¶22    The State's seventeen-month delay was poor practice. Still, our precedent suggests that the individual circumstances of a case determine whether a delay of this length is unreasonable. For instance, in *Hobble-Diamond*, we determined that a one-year delay in prosecuting an action after a canceled status conference was "not *per se* unreasonable." *Hobble-Diamond*, 272 Mont. at 41, 899 P.2d at 534. And in *Becky*, we determined that a thirty-month delay was not unreasonable where the plaintiffs offered reasonable excuses for the interval. *Becky*, 245 Mont. at 17, 798 P.2d 1017. But in *Westland*, we concluded that five years between the complaint and the motion to dismiss was an "unreasonably long time" to prosecute a "simple case" where the plaintiff took no action in the eighteen months preceding the motion to dismiss. *Westland*, 259 Mont. at 416-17, 856 P.2d at 1377; *see also Pool v. Butte Pro-Release Center, Inc.*, 283 Mont. 287, 290, 939 P.2d 1011, 1013 (1997) (concluding that the plaintiff's failure to make himself available for deposition for the twenty-two months preceding the motion to

dismiss constituted unreasonable delay). Although the State offers little excuse for its conduct, in this complex case involving multiple parties, contracts, and cross-motions, we conclude that the seventeen-month delay, like the twelve-month delay in *Hobble-Diamond*, was "not *per se* unreasonable." *Hobble-Diamond*, 272 Mont. at 41, 899 P.2d at 534.

¶23 The District Court determined that Liberty suffered actual prejudice because the State's delay resulted in (1) the unavailability of fact witnesses and (2) Liberty being unable to close its case file. In *Pool*, the defendant supported his motion to dismiss by attaching an affidavit attesting to witnesses who were unavailable because of a delay in prosecution. *Pool*, 283 Mont. at 290, 939 P.2d at 1013. But in this case, Liberty submitted no evidence—either in the affidavit it attached to its motion or anywhere else—to support the finding that witnesses had become unavailable.

¶24 Further, Liberty and the State were not the only parties in this litigation. Welles did not (and could not) appeal the summary judgment orders until final judgment was entered, which did not occur until after the dilatory period. Mont. R. App. P. 6(1); *Trombley v. Mann*, 2001 MT 154, ¶ 6, 306 Mont. 80, 30 P.3d 355. Presumably, Liberty had to keep its file open until after Welles could resolve its appeal. Thus, it is not clear that Liberty could have closed its file any sooner had the State been diligent instead of dilatory. Moreover, Liberty did not submit attorney billing statements or any other evidence showing harm that resulted from simply having to keep its case file open. The record does not support a determination of actual prejudice.

12

¶25 In *Hobble-Diamond*, we noted that, because "the District Court relied on inappropriate time periods and erroneously found actual prejudice," closer consideration of the third factor was necessary. *Hobble-Diamond*, 272 Mont. at 42, 899 P.2d at 534-35. The same holds true here. The District Court's dismissal order does not acknowledge that the State responded to Liberty's motion to dismiss by moving for a scheduling conference to set a date for trial. In *Doug Johns*, we stated that "simply . . . schedul[ing] the case for trial" would have constituted an "adequate remedy" for a party's delay. *Doug Johns*, 246 Mont. at 299, 805 P.2d at 1304. Given the availability of this and other remedies—including ordering the State to pay any attorneys' fees incurred as a result of the delay—the third factor weighs against dismissal.

¶26 Finally, on the fourth factor, the District Court concluded that, while it did not warn the State that it might dismiss the case, Liberty did. Specifically, in March 2012, Liberty sent a letter to the State informing the State that Liberty would move to dismiss if the State did not respond to the settlement offer. We noted in *Hobble-Diamond* that, "[f]or purposes of considering the [dismissal] factors . . . it is sufficient to observe that the court did not formally warn [the plaintiff] that its case was in danger of dismissal." *Hobble-Diamond*, 272 Mont. at 42-43, 899 P.2d at 535. We agree that the State should not have ignored Liberty's warning. But even if that warning were sufficient to satisfy the fourth factor, it alone is not compelling.

¶27 Weighing the factors, we conclude that the District Court abused its discretion by dismissing the State's case against Liberty. Although we do not condone the State's delay, on balance—particularly, absent a showing of actual prejudice—we are left with

13

the "definite and firm conviction that the district court committed a clear error in weighing the relevant factors." *Doug Johns*, 246 Mont. at 298, 805 P.2d at 1303.

## CONCLUSION

¶28    We reverse the appealed orders.  We remand Welles's claim against Jensen for entry of summary judgment in favor of Welles.  We remand the State's claim against Liberty for further proceedings.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT
/S/ JIM RICE