Justice Jim Rice delivered the Opinion of the Court.
***120 ¶1 Vision Net, Inc., (Vision Net) appeals the order entered by the First Judicial District Court, Lewis and Clark County, denying its motion for summary judgment and granting summary judgment to the Montana Department of Revenue (DOR or Department). The District Court held the Department could properly centrally assess Vision Net's property, resulting in a significant increase in the company's state tax liability. Vision Net argues that DOR's central assessment violated statute and the company's constitutional rights of equal protection and equalization under Article II, § 4 and Article VII, § 3 of the Montana Constitution. We affirm and address the following issue:
Did the District Court err by holding the Department properly centrally assessed Vision Net's property?
FACTUAL AND PROCEDURAL BACKGROUND
¶2 Vision Net is a Montana corporation headquartered in Great Falls, collectively owned by nine telephone companies, but is not a subsidiary of any other company. Vision Net provides internet-related services to Montana customers, including two-way video conferencing, internet connections, technical consulting, and network management, among other things. Vision Net owns telecommunications equipment that is positioned in thirty-two Montana counties and connected by fiber optic cables that transport customer data across the network. As of 2015, Vision Net owned 7.43 miles of fiber cable, all of which was located within the separate boundaries of Yellowstone County, Lewis and Clark County, and Flathead County. None of the cable owned by Vision Net physically crosses state or county lines. Vision Net also leases access to additional cable. Telephone companies and cooperatives own fiber optic cables that stretch across Montana and into other states. To connect its telecommunications equipment and create its state-wide network, Vision Net leases access to "dark fiber"-an industry term referring to individual strands of unused fiber within a fiber optic cable-from other telephone companies. By entering "indefeasible right ***121 of use" agreements with telephone companies, Vision Net obtains access to fiber that crosses county lines, connects its equipment, and ultimately provides network services to its Montana customers.
¶3 Vision Net monitors and maintains its network from the company's Network Operations Center located in Great Falls. The Center *1036 operates twenty-four hours per day, seven days per week, and 365 days per year. The Great Falls location serves as Vision Net's principal office, which houses the company's CEO, business operations, and customer service call center. Vision Net also manages its centralized billing system from the Great Falls office.
¶4 Historically, Vision Net's properties have been locally assessed by the counties in which the property is located, and were classified by the Department as Class Four commercial and Class Eight business equipment, pursuant to §§ 15-6-134, -138, MCA. In 2015, the Department, pursuant to § 15-8-601(1), MCA, reclassified Vision Net as a centrally assessed company under § 15-23-101(2), MCA, placing its properties within Class Thirteen pursuant to § 15-6-156(1), MCA, which increased Vision Net's total tax liability by over 300%. To avoid a claim of double taxation, the Department removed the value of the fiber leased by Vision Net from the valuation of the company, choosing instead to tax the telephone companies for the entire fiber cable lines.
¶5 Vision Net filed a Petition for Declaratory Judgment in April 2016, challenging the Department's decision to reclassify Vision Net's property as a violation of Montana statutory and constitutional rights. The parties filed cross-motions for summary judgment and the District Court held oral argument on the motions in January 2018, after which the District Court granted summary judgment to the Department.
STANDARD OF REVIEW
¶6 We review a district court's ruling on summary judgement de novo, applying the same criteria as the district court according to M. R. Civ. P. 56. Bailey v. State Farm Mut. Auto. Ins. Co. , 2013 MT 119, ¶ 18, 370 Mont. 73, 300 P.3d 1149. This Court may "reverse or modify" the decision of a state agency "if substantial rights of the appellant have been prejudiced" through a "violation of constitutional or statutory provisions." Section 2-4-704(2)(a)(i), MCA. We review a district court's conclusions of law for correctness. State v. PPL Mont., Inc. , 2007 MT 310, ¶ 19, 340 Mont. 124, 172 P.3d 1241.
DISCUSSION
¶7 Did the District Court err by holding the Department properly ***122 centrally assessed Vision Net's property?
¶8 Section 15-23-101, MCA, identifies properties the Department must centrally assess, and states, in relevant part:
The department shall centrally assess each year:
...
(2) property owned by a corporation or other person operating a single and continuous property operated in more than one county or more than one state[;]
Section 15-23-101(2), MCA. Vision Net argues it is not subject to central assessment because "[i]t does not operate a single and continuous intercounty property" as required under the statute. Vision Net acknowledges that it owns property throughout the state, but contends because none of its owned property crosses county lines, it does not qualify for central assessment.
¶9 The Department answers that even though Vision Net's network includes some leased property, the company nonetheless still operates a single and continuous property in more than one county, subjecting it to central assessment. The Department argues Vision Net operates as a "functionally integrated property" that broadly provides internet services to Montana customers across the state. The District Court agreed, concluding Vision Net satisfied the operational requirements of § 15-23-101(2), MCA, and is subject to central assessment.[1]
*1037 ¶10 Vision Net argues it neither owns nor operates "a single and continuous intercounty property" because, first, only its leased fiber optic cables cross county lines. Vision Net cites to its fiber lease agreements with the telephone companies, which, as the District Court found, "expressly assign[ ] to the telephone company the responsibility to design, engineer, install, and construct the fiber optic system." Comparing its use with the array of responsibilities vested in the ***123 telephone companies to maintain and control the leased intercounty cables, Vision Net contends that, at most, its actions amount to "use" of the cables, not "operation" as required by § 15-23-101(2), MCA.
¶11 Initially, we note that § 15-23-101(2), MCA, is not a model of clarity, employing double uses of the terms "property" and "operate" within its single clause. Ownership of the property is considered in the determination of central assessment, but the operative phrase in the provision is "a single and continuous property operated in more than one county," and thus the question is broader than a consideration of ownership. As we explained in Bresnan Communs., LLC v. State Dep't of Revenue , 2013 MT 357, ¶ 46, 373 Mont. 29, 315 P.3d 921, "[p]roperties that enjoy a unity of ownership and devotion to a single use qualify as single and continuous properties" (citing W. Union Tel. Co. v. State Bd. of Equalization , 91 Mont. 310, 322-23, 7 P.2d 551, 552-53 (1932) ), but also, " '[s]ingle and continuous' properties are functionally integrated over a wide area and enjoy a unity of use and management." Bresnan , ¶ 46. Bresnan owned equipment in twenty Montana counties and upgraded its network so that it could also provide fiber optic internet and telephone service to customers in those counties. Bresnan , ¶ 47. We noted that Bresnan operated a continuous network across county lines, managed operations from a central location, enjoyed the benefits of centralized billing, and overall operated in an "integrated fashion." Bresnan , ¶ 47.[2]
¶12 Similarly, here, Vision Net owns equipment in thirty-two counties across the state of Montana that are connected by fiber optic cables, some of which are intra-county cables owned by Vision Net, and other cables that are leased from telephone companies. This connected network is monitored from Vision Net's Operations Center, where other business operations such as centralized billing and customer support are also coordinated. Vision Net uses its network to provide internet-based services to customers throughout the state. Although Vision Net leases connecting cable, its network as a whole is "functionally integrated over a wide area," allowing the company to "enjoy a unity of use and management," and is operated as a single and continuous property. Bresnan , ¶ 46.
¶13 Despite these aspects of a single property, Vision Net argues it does not satisfy the definition of "operating" the leased fiber optic ***124 cables as necessary under the statute. As Vision Net notes, "operate" is not defined under the statute or other applicable laws and therefore, offers various dictionary definitions to argue that "operating" requires physical and exclusive control. However, none of these offered definitions of "operate" require an act to be performed exclusively by one party at one time. In Mont. Dep't of Revenue v. Priceline.com, Inc ., 2015 MT 241, ¶ 10, 380 Mont. 352, 354 P.3d 631, we held that one definition of "operate" is "to manage and put or keep in operation whether with personal effort or not." Priceline , ¶ 10 (citing Pitt Cnty. v. Hotels.com, LP , 553 F.3d 308, 313 (4th Cir. 2009) (quoting Webster's Third New International Dictionary 1580-81 (2002))). Vision Net satisfies this definition. The company manages traffic over the leased fiber and ensures that it continues to operate *1038 within the network by constantly monitoring the flow of data across the state from its Network Operations Center. The fact that the fiber leasing agreements give the telephone companies exclusive right to physically repair and maintain the fiber does not mean Vision Net is not also using the lines to "operate" its connected system. Given its unfettered right to use and monitor the fiber, Vision Net's use of the lines in conjunction with the remainder of its network satisfies the definition of "operate[ ]" in § 15-23-101(2), MCA.
¶14 After considering both the physical attributes and the use and functioning of the property, we conclude that Vision Net is operating a single and continuous property in more than one county, and that the District Court correctly held that it was subject to central assessment.
¶15 Finally, Vision Net argues the Department "treat[ed] Vision Net differently than other similarly situated entities" by centrally assessing Vision Net while not doing so to companies that also "lease and use fiber to transport data," and therefore, as applied by the Department, § 15-23-101, MCA, violates its rights to equal protection and equalization under the Montana Constitution. Article II, § 4 of the Montana Constitution guarantees that no one "shall be denied the equal protection of the laws." Article VIII, § 3 of the Montana Constitution carries equal protection into the tax realm by requiring the state to "appraise, assess, and equalize the valuation of all property which is to be taxed in the manner provided by law."
¶16 We have long held that "the first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner." PPL Mont., Inc. , ¶ 33 (citation and internal quotations omitted). " 'If the classes are not similarly situated, ***125 then ... it is not necessary for us to analyze the challenge further.' " Donaldson v. State , 2012 MT 288, ¶ 21, 367 Mont. 228, 292 P.3d 364 (Rice, J., concurring) (quoting Kershaw v. Dep't of Transp. , 2011 MT 170, ¶ 17, 361 Mont. 215, 257 P.3d 358 ). We identify similarly situated classes by "isolat[ing] the factor allegedly subject to impermissible discrimination." Gazelka v. St. Peter's Hosp ., 2018 MT 152, ¶ 16, 392 Mont. 1, 420 P.3d 528 (citation and internal quotations omitted). "Thus, two groups are similarly situated if they are equivalent in all relevant respects other than the factor constituting the alleged discrimination." Gazelka , ¶ 16.
¶17 Here, central assessment is the factor Vision Net claims is subject to impermissible discrimination. Vision Net asserts it was unlawful for the Department to centrally assess its properties when "[a] number of other entities including banking institutions, accounting firms, and law firms lease access to dark fiber to transfer data between locations in Montana," yet are not also centrally assessed. However, Vision Net has failed to establish that they are similarly situated or "equivalent" to these other entities "in all relevant respects," apart from the alleged differences in tax assessment. Gazelka , ¶ 16. For purposes of an equal protection challenge, commonly leasing fiber cables does not, by itself, render Vision Net similarly situated to other entities that do the same.
¶18 Section 15-23-101, MCA, requires the Department to centrally assess property that satisfies certain criteria, but it does not enumerate fiber leasing as a definitive characteristic of a centrally assessable property. As discussed above, a variety of factors are considered when determining whether central assessment is proper. Simply because two companies both lease fiber optic cable does not, without more, render them similarly situated for purposes of the application of § 15-23-101, MCA.
¶19 "It is now settled by a long line of decisions that ... the equal protection clause is not violated by prescribing a different rule of taxation for such companies than for concerns engaged in other lines of business." W. Union Tel. Co. , 91 Mont. at 325, 7 P.2d at 554. Vision Net is a telecommunications company, which exists in a different industry than the other entities it uses in comparison. We conclude that Vision Net has failed to establish it was unequally treated to *1039 another similarly situated party, and thus, its constitutional challenge is without merit.
¶20 Affirmed.
We concur:
MIKE McGRATH, C.J.
LAURIE McKINNON, J.
INGRID GUSTAFSON, J.
JAMES JEREMIAH SHEA, J.

Vision Net contends the Department incorrectly argued to the District Court that, merely because Vision Net satisfied the definition of a telecommunications company, central assessment is required under § 15-6-156(1)(d), MCA, which places into Class Thirteen "allocations of centrally assessed telecommunications services companies." However, while portions of the Department's arguments could be so read, ultimately its position was correctly summarized: "The Department assesses centrally the interstate and inter-county continuous properties of telecommunications companies." DOR's Brief in Support of its Motion for Summary Judgment, at *10 (emphasis added). Section 15-6-156(1)(d), MCA, places into Class Thirteen telecommunications services company property that has been determined to qualify for central assessment pursuant to § 15-23-101, MCA. The District Court likewise correctly stated the specific issue: "The question is whether the taxpayer operates a single and continuous property across county or state lines." Order on Motions for Summary Judgment, at *11.

Bresnan also involved a classification question about whether the company was to be taxed as a "telecommunication services company[y]" or as a "cable television system[ ]," which is not at issue here. Bresnan , ¶¶ 25, 42.