DA 19-0158

FILED

08/18/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0158

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 211

FIRST NATIONAL PROPERTIES, LLC,

       Plaintiff and Appellant,

  v.

JOEL D. HILLSTEAD TRUST, dated February 25, 1982;
ROSEMARY HILLSTEAD TRUST, dated February 24, 1982;

       Defendants, Appellees, and Cross Appellants,

and,

WHITEFISH CREDIT UNION,

       Defendant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and For the County of Flathead, Cause No. DV 17-238D
                Honorable Dan Wilson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Mark D. Parker, Geoffrey T. Cunningham, Parker, Heitz & Cosgrove,
           PLLC, Billings, Montana

      For Appellees:

           Richard De Jana, Richard De Jana & Associates, PLLC, Kalispell, Montana

                       Submitted on Briefs:  January 22, 2020

                              Decided:  August 18, 2020

Filed:

                         _____
                                  Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1     Plaintiff First National Properties, LLC (FNP) appeals, and Defendants Joel D. Hillstead Trust, dated February 25, 1982, and Rosemary Hillstead Trust, dated February 24, 1982, (collectively, "the Trusts"), cross-appeal from the orders of the Eleventh Judicial District Court, Flathead County, denying the parties' cross-motions for summary judgment, and its subsequent Findings of Fact, Conclusions of Law, and Order holding FNP liable for additional taxes the Trusts owed as a result of FNP's prepayment on the contract.

¶2     We reframe and address the following issues:[1]

*Issue One: Did FNP fully perform under the terms of either the promissory note or trust indenture, thus extinguishing any further obligations?*

*Issue Two: Did the prepayment clause that provided that FNP shall pay "any additional taxes incurred by [the Trusts] by reason of [FNP's] prepayment" obligate FNP to pay the additional taxes that were incurred by the Trusts in the year the prepayment was made, or the total additional taxes the Trusts incurred over the term of the contract?*

*Issue Three: Are the Trusts entitled to prejudgment interest?*

¶3     We affirm the District Court on issues one, and three. We reverse and remand as to issue two for further proceedings consistent with this opinion.

---

[1] The Trusts argue that FNP should be precluded from arguing what the Trusts contend are new issues on appeal that were not made to the District Court. Specifically, the Trusts contend: "FNP's argument that the full tender was made under the language of the deed of trust was never made below. FNP's issue . . . as to the choice of accountants also raises new matters." Because we find FNP's arguments as these issues ultimately unavailing on their merits, we decline to address the Trusts' contention that the arguments are not preserved.

2

**PROCEDURAL AND FACTUAL BACKGROUND**

¶4 On February 25, 2009, FNP entered into an agreement with the Trusts for the purchase of real property in Kalispell. The documents comprising the purchase agreement included a promissory note, trust indenture, and an escrow agreement. The note set forth a payment schedule in which FNP agreed to make monthly payments to the Trusts of $6,770 for approximately seven years, as well as two balloon payments. The first balloon payment of $100,000 was due in May 2009. The second balloon payment for the remaining balance was due in May 2016. All payments were to be made to an escrow agent. Upon FNP satisfying the payment obligations of the trust indenture note, the Trusts agreed to convey the property to FNP.

¶5 Both the promissory note and the instructions in the escrow agreement contained the following paragraph:

> This note may not be prepaid in full or in part without the written consent of [the Trusts]. Any prepayment shall require payment to [the Trusts] such amounts as determined by [the Trusts'] accountant to pay any additional taxes incurred by reason of such prepayment. Prepayment in full shall be credited on the date received. Partial shall be [the] next payment date.

The prepayment clause in the trust indenture was substantively identical to the clause in the promissory note and the escrow agreement instructions, except it included a parenthetical that specified the taxes for which FNP would be liable because of prepayment were both "state and federal." The prepayment clause language was drafted exclusively by Joel Hillstead as trustee for the Trusts.

¶6 In April 2014, FNP tendered to the escrow agent the remaining balance due under the promissory note: $805,775.59, approximately two years in advance of when the final

3

balloon payment was due. The escrow agent provided the following warning to FNP: "[T]he payoff quoted herein is subject to the conditions, provisions and restrictions contained in the various documents held in this escrow. We suggest that you . . . verify any conditions or provisions or restrictions affecting early payoffs[.]" The escrow agent accepted the payment and deposited the $805,775.59 into the Trusts' account.

¶7 The Trusts discovered the payment after reviewing a bank statement. Thinking there was an error, Joel Hillstead contacted the escrow agent who informed him that FNP had paid the remaining balance on the trust indenture note. Hillstead contacted FNP officer, Pat Evenson, to discuss the prepayment clause. After reviewing the documents, Evenson acknowledged that the agreement contained a prepayment clause and told Hillstead that FNP would abide by the agreement.

¶8 Hillstead sought advice regarding the tax ramifications of the prepayment. After being informed that the Trusts' original accountant had retired, Hillstead consulted another accountant who informed him that the tax liability as a result of FNP's prepayment was $5,200. Hillstead obtained a second estimate from another accountant who told him the increased tax liability was $6,500. Based on this estimate, on June 14, 2014, the Trusts' attorney notified the escrow agency that the additional taxes and expenses incurred by reason of FNP's prepayment was $6,500. This figure was arrived at by calculating the Trusts' increased tax liability over the term of the contract. The escrow agent forwarded this information on to FNP.

¶9 FNP did not pay the $6,500 to the escrow agent by August 2014, at which time the Trusts' attorney withdrew the $6,500 demand and advised the escrow agent that the

4

original calculation had been incorrect. The Trusts' attorney directed the escrow agent to return any payment from FNP, although no payment had been tendered at that time in any event.

¶10    In September 2014, FNP tendered $6,500 to the escrow agent. By this time, however, the escrow agent had been notified by the Trusts' attorney that the $6,500 calculation was incorrect. The Trusts rejected the payment, and the escrow agent returned the $6,500 payment pursuant to the Trusts' instructions.

¶11    On September 17, 2014, the Trusts' attorney wrote a letter to the escrow agent setting forth his own calculation of the increased tax liability for the Trusts in the 2014 tax year, which amounted to $59,262. The attorney explained his calculation in the letter which included, among other items, an alternative minimum tax liability of $8,063. The attorney requested payment from FNP in the full amount of $59,262 to satisfy FNP's obligation under the prepayment clause.

¶12    Rather than paying the full amount demanded, FNP isolated the alternative minimum tax liability figure and tendered payment in the amount of $8,063. Pursuant to the Trusts' instructions, the escrow agent rejected this payment.

¶13    On March 17, 2017, FNP sued the Trusts, alleging that FNP's obligations under the purchase agreement were satisfied, seeking an order requiring the Trusts to reconvey the real property to FNP as contemplated by the purchase agreement, and seeking monetary damages. The Trusts counterclaimed for breach of contract.

¶14    The Trusts moved for partial summary judgment on the issue of liability for their breach of contract claim. FNP filed a cross-motion for summary judgment, asserting that

FNP had satisfied its obligations to the Trusts under the agreement. The District Court denied both motions because it determined a material factual dispute existed regarding whether the $8,063 increase in the alternative minimum tax occasioned by FNP's prepayment was an amount which was determined by the Trusts' accountant for purposes of the contract, and whether the $8,063 increase is the actual amount of additional taxes occasioned by FNP's prepayment and experienced by the Trusts.

¶15   In the Final Pretrial Order, the parties agreed that over the total length of the contract, the Trusts incurred additional federal tax liability of $12,417 due to FNP's balance payoff in 2014. This calculation was made using the Trusts' actual tax returns for the years of 2014 through 2016.

¶16   The matter proceeded to a bench trial, after which the District Court issued its Findings of Fact, Conclusions of Law, and Order. The District Court held that the language of the prepayment clause that was central to the dispute was ambiguous as a matter of law and that it was appropriate to consider extrinsic evidence to determine the parties' intent in adopting the prepayment clause. The District Court did not find any credible evidence concerning FNP's understanding of the language of the prepayment clause. One of FNP's witnesses testified that none of FNP's principals were aware of the existence of the prepayment clause when FNP paid off the balance. Thus, the only relevant extrinsic evidence to be considered in determining the parties' intent was proffered by the Trusts through the testimony of Joel Hillstead. After his testimony, the District Court found the parties underlying intentions to be: (1) provide a financial disincentive to FNP paying the balance of the promissory note sooner than the schedule of payments allows; (2) provide

6

an objective basis for determining the amount of the financial disincentive to be assessed against FNP for making the early payment; and (3) provide a mechanism for determining the amount of additional taxes owed by the Trusts by reason of FNPs prepayment both accurate and relatively quickly.

¶17 Based on what it determined to be the parties' intentions, the District Court held that the proper interpretation of the ambiguous prepayment clause was the following:

> The amount of the assessment payable by FNP to the Trusts following any prepayment by FNP under the promissory note is equal to the amount of additional state and federal taxes payable by the Trusts for the tax year during which FNP's prepayment occurs. The result is that the amount of the assessment payable by FNP to the Trusts is equal to the sum of additional federal taxes owed by the Trusts for the 2014 tax-year by reason of FNP's early payment ($97,819.00) plus the sum of the additional state taxes owed by the Trusts for the tax-year 2014 ($22,596.00), yielding a total sum [of] $120,415.00.

¶18 The District Court also held that the tendered performance by FNP did not extinguish FNP's further obligations because the amounts tendered were less than what FNP actually owed. The District Court held that FNP was not entitled to a deed of conveyance until they had fulfilled all of their obligations under the contract. The District Court awarded the Trusts $120,415 in damages due to FNP's breach, plus costs and reasonable attorney fees. The District Court denied the Trusts' request for prejudgment interest on the damage award.

### STANDARDS OF REVIEW

¶19 We review a district court's ruling on summary judgement de novo and apply the same M. R. Civ. P. 56 criteria as the district court. *Vision Net Inc. v. State*, 2019 MT 205, ¶ 6, 397 Mont. 118, 447 P.3d 1034 (citing *Bailey v. State Farm Mut. Auto Ins. Co.*

2013 MT 119, ¶ 18, 370 Mont. 73, 300 P.3d 1149).  Summary judgment may be granted if the moving party can show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  M. R. Civ. P. 56; *Flathead Bank of Bigfork v. Masonry by Muller, Inc.*, 2016 MT 269, ¶ 5, 385 Mont. 214, 383 P.3d 215.

¶20     "The construction and interpretation of a contract are questions of law that we review for correctness."  *State v. Langley*, 2016 MT 67, ¶ 12, 383 Mont. 39, 369 P.3d 1005.  *See also Ophus v. Fritz*, 2000 MT 251, ¶ 19, 301 Mont. 447, 11 P.3d 1192.  When there are cross-motions for summary judgment, a district court must evaluate each party's motion on its own merits.  *Kilby Butte Colony, Inc. v. State Farm Mut. Auto Ins. Co.*, 2017 MT 246, ¶ 7, 389 Mont. 48, 403 P.3d 664.

¶21     "We review a district court's conclusions of law to determine whether they are correct and its finding of fact to determine whether they are clearly erroneous."  *Flathead Bank of Bigfork*, ¶ 5.  A finding of fact is clearly erroneous if it is not supported by substantial evidence in the record; if the district court misapprehended the evidence; or when our review of the record leaves this Court with the definite and firm conviction that a mistake has been committed.  *Brimstone Mining, Inc. v. Glaus*, 2003 MT 236, ¶ 20, 317 Mont. 236, 77 P.3d 175.

¶22     The district court is in the best position to observe and determine the credibility of witnesses, and "we will not second guess its determination regarding the strength and weight of conflicting testimony."  *Brimstone Mining*, ¶ 20 (citation omitted).  *See also Tomlin Enters. Inc. v. Althoff*, 2004 MT 383, ¶ 22, 325 Mont. 99, 103 P.3d 1069.  On appeal the district court's findings of fact are construed in favor of the prevailing party,

8

*Tomlin*, ¶ 22. "We review a district court's finds to determine whether substantial evidence supports those findings, not contrary findings." *Brimstone Mining*, ¶ 20.

## DISCUSSION

¶23 *Issue One: Did FNP fully perform under the terms of either the promissory note or trust indenture, thus extinguishing any further obligations?*

¶24 FNP advances two alternative arguments regarding its alleged full performance. First, FNP contends that it fully performed under the trust indenture when the Trusts accepted the full prepayment amount. Second, FNP argues that "to the extent FNP continued to owe a prepayment penalty to the Trusts, following the Trusts' unqualified acceptance of the $805,775.59 tender of full performance, the remaining amount owed was the increase in tax over the entire term of the contract as calculated by the Trusts' accountant." FNP emphasizes that the amount of tax liability it was obligated to pay under the prepayment clause was the amount determined by the Trusts' accountant, which FNP contends it tendered to the Trusts on two separate occasions. We find both arguments unavailing.

¶25 Turning first to FNP's argument that its tender of the balance due on the trust indenture constituted full performance, FNP does not dispute that the amount it tendered did not include the payment of any tax liability incurred by the Trusts because of the prepayment. Indeed, though the parties argued vociferously as to *how* to calculate the tax liability, and what amounts were due—an issue we resolve below—a point that was not in dispute was that the prepayment did not include any payment towards tax liability.

9

¶26    FNP argues:

> [W]hen the $805,775.59 was tendered and transferred immediately to the Trusts' account, it was treated as prepayment in full as it was credited on the date received. Further, the prepayment was to include the additional taxes to be incurred pursuant to the above clause. The trust indenture only secures the payment of principal, interest and money the beneficiaries may advance to secure the property, which includes items like taxes and insurance. Thus, FNP's tender of full payment under the trust indenture was constituted performance of obligations.

¶27    FNP's argument is without merit. The trust indenture, like the promissory note, included the nearly identical prepayment clause, requiring FNP to pay to the Trusts "such amounts as determined by [the Trusts'] accountant as will pay any additional taxes (state and federal) incurred by reason of such prepayment." Thus, payment of additional taxes incurred by reason of the prepayment was an obligation of the trust indenture. Yet while acknowledging that the prepayment did not include payment of any amounts towards additional taxes incurred by the Trusts by reason of the prepayment, FNP argues "no doubt, FNP provided full performance of its obligations under the trust indenture." This is incorrect. By the very terms of the trust indenture, full performance of FNP's obligations under the trust indenture in the event of a prepayment required payment of the increased tax liability.

¶28    We next turn to FNP's argument that "to the extent FNP continued to owe a prepayment penalty to the Trusts, following the Trusts' unqualified acceptance of the $805,775.59 tender of full performance, the remaining amount owed was the increase in tax over the entire term of the contract as calculated by the Trusts' accountant." The basis for FNP's argument is its emphasis on the language in the prepayment clause that the

10

amount of tax liability FNP is required to pay will be "such amounts as determined by [the Trusts'] accountant." FNP argues that "[t]here can only be one reasonable interpretation" regarding this provision: "[t]he Trusts were to identify an accountant to calculate the additional taxes incurred as a result of the prepayment, and FNP would pay that amount." FNP contends that it satisfied this obligation when it first tendered the $6,500 amount that had been calculated by the Trusts' designated accountant, and then when it tendered the $8,063 alternative minimum tax payment, both of which were rejected by the Trusts.

¶29 The District Court rejected FNP's argument. It held that identifying "the Trusts' accountant" as the person who would determine the Trusts' additional tax liability by reason of FNP's early payment was "not so much to delegate the task to the inherent or subjective discretion of a particular individual but to assign the task of making an objective calculation to someone already familiar with the Trusts' financial affairs." The District Court concluded, "the language of the prepayment clause identifying an accountant to determine the additional taxes incurred by reason of FNP's prepayment provides no reasonable basis for excluding evidence of tax calculations provided by other, competent tax professionals . . . ." We agree.

¶30 FNP argues essentially that the prepayment clause effectively designated the Trusts' accountant as the final arbiter of FNP's liability to the Trusts for the prepayment taxes. Indeed, FNP made that explicit contention to the District Court in its cross-motion for summary judgment: "[T]he contract seemingly grants to the [Trusts'] accountant the right to arbitrate the differential in taxes due as a result of the prepayment." One need only

11

consider the practical ramifications of such an interpretation to appreciate its absurdity. If the Trusts conveyed to FNP that its accountant had determined its tax liability was one million dollars, FNP obviously would have taken issue with that figure, and rightly so. Interpreting an ambiguous contract provision as allowing one party to the contract to unilaterally determine its own contract damages in the event of a breach would lead to an absurd result. "Montana law compels us to reject [a contract] interpretation that would lead to absurdities." *Mont. Health Network, Inc. v. Great Falls Orthopedic Assocs.*, 2015 MT 186, ¶ 21, 379 Mont. 513, 353 P.3d 483.

¶31 Moreover, FNP's conduct does not evoke an interpretation that the Trusts' personal accountant would be the final arbiter of the amount due. It is not disputed that after the Trusts' accountant initially arrived at a figure of $6,500, FNP did not attempt to convey that amount to the Trusts until months later, and long after the amount had been withdrawn as inaccurate. After FNP's $6,500 tender was rejected, the Trusts conveyed an amended figure of $59,262, from which FNP isolated the alternative minimum tax liability figure, and tendered payment in the amount of $8,063, which was also rejected. Thus, FNP's conduct does not support the interpretation it now advances that the parties would be bound by the figure arrived at by the Trusts' accountant, since FNP clearly did not conduct itself as if it was bound by the Trusts' accountant's calculation.

¶32 FNP did not fully perform under the trust indenture when the Trusts accepted the full prepayment amount, exclusive of the prepayment tax liability; nor did FNP extinguish its obligations to pay the prepayment tax by tendering amounts that it contends were arrived

at by the Trusts' accountant. The District Court did not err when it held FNP did not extinguish its obligations by tendering full performance.

¶33 *Issue Two: Did the prepayment clause that provided that FNP shall pay "any additional taxes incurred by [the Trusts] by reason of [FNP's] prepayment" obligate FNP to pay the additional taxes that were incurred by the Trusts in the year the prepayment was made, or the total additional taxes the Trusts incurred over the term of the contract?*

¶34 The operative language of the prepayment clause reads as follows:

Any prepayment shall require payment to [the Trusts] such amounts as determined by [the Trusts'] accountant to pay any additional taxes incurred by reason of such prepayment.

¶35 There are several well-established guiding principles when interpreting a contract. The intentions of the parties to a written contract are ordinarily determined from the plain language of the contract. Section 28-3-303, MCA. If the language is susceptible to two different interpretations, an ambiguity exists. *Langley*, ¶ 17. "Where contracts are ambiguous, we will construe the ambiguity 'most strongly' against the drafter." *Mont. Health Network*, ¶ 22. When a contract is ambiguous, a court may consider extrinsic evidence to discern the parties' intent and meaning. *Estate of Irvine v. Oaas*, 2013 MT 159, ¶ 22, 372 Mont. 49, 309 P.3d 986. "The practical interpretation of a contract, which the parties placed upon it by their course of conduct, is entitled to a great, if not controlling influence in ascertaining what they understood by its terms." *Ophus*, ¶ 29.

¶36 The District Court found the prepayment clause to be ambiguous and immediately moved to the consideration of extrinsic evidence in analyzing the ambiguity. However, the District Court also found, and the parties do not dispute, that the ambiguous prepayment clause was drafted entirely by the Trusts. The District Court failed to consider in its

13

analysis that the ambiguity was to be construed "most strongly" against the Trusts, as the drafter. *Mont. Health Network*, ¶ 22. In the event of a prepayment, the prepayment clause required FNP to pay "any additional taxes incurred by reason of such prepayment." The clause is silent as to whether the "additional taxes incurred" means additional taxes incurred in the year the prepayment was made or incurred over the term of the contract, thus the ambiguity. The fault for this ambiguity lies with the Trusts, and it accordingly should have been construed most strongly against them as the drafter.

¶37    Beyond construing the ambiguity most strongly against the Trusts, as FNP points out, the Trusts course of conduct in the immediate aftermath of the prepayment indicates that they intended the prepayment tax consequences to be considered over the term of the contract, not in the year in which the prepayment was made. The Trusts arrived at the $6,500 calculation regarding the tax liability for the early prepayment per Joel Hillstead's instructions to the accountant, who expressly calculated the tax liability over the term of the contract, not the liability for the year of the prepayment. This method was confirmed when the Trusts conveyed the $6,500 demand to FNP via their attorney, who wrote: "[t]he tax difference was calculated over the term of the contract rather than just the year of payment." Although the demand for payment of $6,500 was later withdrawn as an inaccurate calculation, it confirms explicitly that the Trusts interpreted the prepayment clause as compensating them for the tax liability incurred over the term of the contract, not in the year of payment. "The practical interpretation of a contract, which the parties placed upon it by their course of conduct, is entitled to a great, if not controlling influence in ascertaining what they understood by its terms." *Ophus*, ¶ 29.

14

¶38 FNP's interpretation of the prepayment clause also is consistent with our precedent regarding the proper assessment of contract damages. "Contract damages seek to place a party in the position in which they would have been had the other party not breached the contract." *McEwen v. MCR, LLC*, 2012 MT 319, ¶ 65, 368 Mont. 38, 291 P.3d 1253 (citing *Textana, Inc. v. Klabzuba Oil & Gas*, 2009 MT 401, ¶ 52, 353 Mont. 442, 222 P.3d 580). "Damages for breach of contract serve the . . . purpose . . . [of making] the injured party whole, but not to make the injured party better off than they were before the damage occurred." *McEwen*, ¶ 66. By accepting the Trusts' interpretation of the ambiguous prepayment clause as advanced at trial, the District Court arrived at a damage award of $120,415. This award included $97,819 for increased federal tax liability, which is nearly eight times the amount of federal tax liability the parties stipulated the Trusts incurred as a result of the prepayment, when calculated over the term of the contract. The Trusts justify this award by arguing that they "were entitled to recover the tax loss determined in the way least injurious to them." But the District Court's award was not the "least injurious" determination, nor was it an award that made the Trusts whole—it was an award that made the Trusts significantly better off than they were before the damage occurred.

¶39 The District Court erred when it interpreted the prepayment clause to obligate FNP to pay the additional taxes that were incurred by the Trusts in the year the prepayment was made instead of the total additional taxes the Trusts incurred over the term of the contract. Accordingly, we reverse and remand to the District Court to enter a judgment in favor of

15

the Trusts which includes damages based on the Trusts' total additional tax liability as calculated over the term of the contract.

¶40     *Issue Three: Are the Trusts entitled to prejudgment interest?*

¶41     Section 27-1-211, MCA, states:

> Each person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover that is vested in the person upon a particular day is entitled to recover interest on the damages from that day except during the time that the debtor is prevented by law or by the act of the creditor from paying the debt.

This statute entitles a person to prejudgment interest if the following three criteria are met: (1) the existence of an underlying monetary obligation; (2) the amount of recovery is certain or capable of being made certain; and (3) the right to recover the obligation vests on a particular day. *Kalispell Aircraft Co., LLC v. Patterson*, 2019 MT 142, ¶ 32, 396 Mont. 182, 443 P.3d 1100. A party is not entitled to prejudgment interest when the party's damages are uncertain. *DiMarzio v. Crazy Mountain Constr., Inc.*, 2010 MT 231, ¶ 59, 358 Mont. 119, 243 P.3d 718.

¶42     We have previously declined to award prejudgment interest when the amount of damages due upon breach of contract are not clearly ascertainable until determined by the trial court. *DiMarzio*, ¶ 59. Here, the amount owed to the Trusts was never made certain because one of the issues central to the dispute was whether the Trusts' tax liability should be calculated over the term of the contract or in the year of prepayment. The District Court correctly declined to award the Trusts prejudgment interest.

16

**CONCLUSION**

¶43    We affirm the District Court's holding that FNP did not extinguish its obligations under either the contract or the trust indenture, and we affirm the District Court's denial of the Trusts' motion for prejudgment interest.  We reverse and remand to the District Court to enter a judgment in favor of the Trusts which includes damages based on the Trusts' total additional tax liability as calculated over the term of the contract.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ LAURIE McKINNON
/S/ JIM RICE
/S/ DIRK M. SANDEFUR
/S/ INGRID GUSTAFSON

17