FILED

07/01/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0320

DA 24-0320

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 140

BUCK KRATZER, d/b/a KRATZER
CONSTRUCTION,

      Plaintiff and Appellee,

  v.

HARDY CONSTRUCTION CO., INC.,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Sixteenth Judicial District,
In and For the County of Carter, Cause No. DV 2023-9
Honorable Nickolas C. Murnion, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Brandon Hoskins, Bryce Burke, Moulton Bellingham PC, Billings,
Montana

      For Appellee:

          Alex W. Hamman, Calton Hamman & Wolff, P.C., Billings, Montana

Submitted on Briefs:  February 5, 2025

Decided:  July 1, 2025

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Hardy Construction Co., Inc. (Hardy) appeals the order of the Sixteenth Judicial District Court, Carter County, granting summary judgment to Plaintiff Buck Kratzer (Kratzer), and denying summary judgment to Defendant Hardy. The dispute arose out of a construction subcontract (the Subcontract) between Hardy, as contractor, and Kratzer, as subcontractor, under which Kratzer was to perform work related to Hardy's contract to construct a building addition for the Ekalaka Public Schools (the Project). We address the following issues:

1. *Whether the District Court erred by granting summary judgment to Kratzer, including requiring Hardy to pay Kratzer interest and attorney fees, and by failing to grant summary judgment to Hardy.*

2. *Whether the District Court erred in establishing the amount owed by Hardy under the Subcontract.*

We affirm in part, reverse in part, and remand for further proceedings consistent herewith.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On March 23, 2021, Kratzer and Hardy entered into the Subcontract, under which Kratzer agreed to complete work for Hardy related to the Project, including site demolition, earthwork, utility installation, and concrete work. Kratzer began the contemplated work and, in March and April, submitted to Hardy two "pay applications" for progress payments, which Hardy timely paid. Construction quality issues thereafter developed with Kratzer's work, related to hot and dry wind conditions at the time Kratzer poured concrete, which caused uneven drying and dips in the concrete surfaces and required repair work to bring

2

the concrete slab up to industry standards. This issue affected the work of other trade subcontractors and delayed Hardy's overall progress on the Project.

¶3 On October 24, 2021, Kratzer submitted Pay Application 3 for the amount of $92,856.45, which included change orders in the amount of $28,852.94 that had not been approved by Hardy. Hardy notified Kratzer that it disapproved of Pay Application 3. On November 12, 2021, Kratzer texted Adam Petersen (Petersen), the project manager for Hardy, and demanded that Pay Application 3 be paid in full, including the unapproved change orders, by the end of the month or he would file suit. Petersen responded, stating "[u]nfortunately that is not how we see it or understand it. Please call us Monday and we can discuss and come to a resolution." After some discussion by the parties, on November 23, 2021, Kratzer submitted to Hardy a reduced amount of $25,332.94 for his change orders. Petersen verbalized his disapproval with that amount as well, and asked Kratzer for additional supporting documentation related to the amount requested, as Kratzer had submitted only line-item amounts.

¶4 On December 6, 2021, Hardy submitted its final pay application to Ekalaka Public Schools for payment on the entire Project. In the meantime, Kratzer provided some of the information requested by Hardy pertaining to the change orders included in Pay Application 3. Hardy promptly requested further information about items contained within Kratzer's change orders—specifically, breakdowns of the days and hours Kratzer had worked. After Kratzer provided these, Hardy notified Kratzer on December 15, 2021, that Kratzer's breakdowns were incorrect because they conflicted with the daily progress reports prepared on the Project. On December 22, 2021, Petersen emailed Kratzer

3

regarding Pay Application 3, stating that Hardy would agree to an additional $4,275 for the change orders, denying the remaining change order charges because they were for work that was already within Kratzer's scope of work under the Subcontract, and that, upon Kratzer signing a release and waiver, Hardy would issue final payment to Kratzer in the amount of $81,153. This figure included the amounts for the remaining work under the Subcontract ($69,878), the approved change orders ($4,275), and retainage ($7,000). Petersen's email included an attached "Release and Waiver" and specified that the sum of $80,341.47[1] would be paid to Kratzer upon Kratzer's signing the release and waiver. Petersen's correspondence did not require a release and waiver form signed by Kratzer's subcontractors and suppliers.

¶5     Six months later, in May 2022, Jason Arrowsmith (Arrowsmith), president of Hardy, emailed Kratzer, stating "I haven't heard back from you in months, and would like to get you paid the $80,341.47 we owe you. Please sign the release and waiver and we'll get the check sent out immediately." Kratzer requested Hardy resend the release form with the corrected amount of $81,153, which Hardy did. However, Kratzer ultimately responded that he would not sign the release and waiver, and requested, through legal counsel, payment of the full amount he had submitted in Pay Application 3, or $92,856.45. More time passed, and in October 2022, Kratzer conveyed to Hardy that he was waiving disputed amounts he had requested in Pay Application 3, and instead demanding payment

---

[1] This amount was initially utilized by Hardy as the amount Kratzer was owed. As noted herein, Kratzer later indicated that the correct calculation would be $81,153. Hardy acknowledged that Kratzer was correct and that it had made a math error. It thereafter utilized $81,153 as its calculation of the amount it believed Kratzer was owed.

4

of $81,153 plus 18% per annum interest commencing November 21, 2021, or $13,326.66, for a total amount of $94,479.66.

¶6     On January 17, 2023, Hardy sent Kratzer a check for $81,153 along with a release and waiver for Kratzer to sign, but maintained that Kratzer was not owed the requested interest. On January 24, 2023, Kratzer again declined payment, reiterating that he was entitled to the interest. On January 26, 2023, Hardy once again tendered payment to Kratzer for $81,153, and this time indicated that Kratzer's acceptance of the payment was not conditioned upon his signing of a release and waiver, and that, further, Hardy would not view Kratzer's acceptance of the payment as a waiver of his claim to interest. However, Kratzer again rejected the proffered payment.

¶7     On February 17, 2023, Kratzer filed this action to collect the amount owed under the Subcontract, as well as interest and attorney fees, alleging breach of contract. As the matter progressed, Hardy's counsel argued that Kratzer's pleadings improperly utilized statements made by Hardy's employees to establish the amount owed, in contravention of M. R. Evid. 408, because the referenced statements were part of settlement offers Hardy had conveyed. Kratzer amended the allegations of his complaint, and in subsequent discovery, Hardy agreed that, upon satisfaction of the conditions of the Subcontract for provision of waiver and release of his subcontractors, Kratzer would be entitled to $81,153, less recoverable damages under Hardy's counterclaims for breach of contract for work defects, and attorney fees. Hardy continued to oppose Kratzer's claims for interest and attorney fees.

5

¶8 Both parties moved for summary judgment on their respective claims. The District Court granted Kratzer's motion and denied Hardy's motion, holding that "Kratzer was entitled to payment of the sum of $81,153 by January 5, 2022, which was 30 days after Hardy received final completion and acceptance of the project and full payment from the Ekalaka Schools." Regarding interest, the District Court ruled that Hardy had delayed the payment by over 30 days in contravention of the Subcontract, and therefore § 28-2-2104(2), MCA, required payment to Kratzer to include 18% interest from January 6, 2022, until January 26, 2023—approximately $15,407. Lastly, the District Court ruled that, under the Subcontract's attorney fee provision, whereby "the prevailing party shall be entitled to recover a reasonable sum for attorney fees from the other party," Kratzer was the prevailing party on the main issue in controversy and therefore was entitled to attorney fees.

¶9 Hardy appeals.

## STANDARDS OF REVIEW

¶10 We review summary judgment orders de novo, applying the same standards as M. R. Civ. P. 56. *A.M. Welles, Inc. v. Mont. Materials, Inc.*, 2015 MT 38, ¶ 5, 378 Mont. 173, 342 P.3d 987 (citing *Albert v. City of Billings*, 2012 MT 159, ¶ 15, 365 Mont. 454, 282 P.3d 704). "Summary judgment is appropriate when the moving party demonstrates the absence of a genuine issue of material fact and the entitlement to judgment as a matter of law." M. R. Civ. P. 56; *A.M. Welles, Inc.*, ¶ 5.

¶11 A district court's construction and interpretation of a contract is a question of law that is reviewed for correctness. *Total Indus. Plant Servs. v. Turner Indus. Grp., LLC*,

6

2013 MT 5, ¶ 22, 368 Mont. 189, 294 P.3d 363 (citing *Richards v. JTL Group, Inc.*, 2009 MT 173, ¶ 14, 350 Mont. 516, 212 P.3d 264). "A district court's determination whether legal authority exists for an award of attorney fees is a conclusion of law, which we review for correctness." *Burns v. Cnty. of Musselshell*, 2019 MT 291, ¶ 10, 398 Mont. 140, 454 P.3d 685. We review a district court's prevailing party determination regarding attorney fees for abuse of discretion. *Kenyon-Noble Lumber Co. v. Dependant Founds., Inc.*, 2018 MT 308, ¶ 11, 393 Mont. 518, 432 P.3d 133 (citing *Wohl v. City of Missoula*, 2014 MT 310, ¶ 12, 377 Mont. 148, 339 P.3d 58).

**DISCUSSION**

¶12   *1. Whether the District Court erred by granting summary judgment to Kratzer, including requiring Hardy to pay Kratzer interest and attorney fees, and by failing to grant summary judgment to Hardy.*

¶13   The parties' arguments center on interpretation of the Subcontract, an issue of law. The disputed provision provides as follows:

> Final payment shall become payable thirty (30) days after final completion and acceptance of the Project by Owner. Prior to final payment Subcontractor shall submit from each of its Subcontractors and suppliers written releases and waivers of claims and liens against the Project, the Owner, and the Contractor.
>
> .   .   .
>
> No payment including the final payment, shall be evidence of the performance of this Subcontract by Subcontractor, either in whole or in part, and no payment shall be construed as an acceptance of defective or incomplete Work, and Subcontractor shall remain responsible and liable for its performance being in strict compliance with this Subcontract and the Prime Contract.

¶14   Hardy argues the District Court incorrectly interpreted the Subcontract, and that, under its plain language, Kratzer failed to comply with the payment provisions and Hardy

7

was entitled to withhold payment until he complied. Specifically, Hardy contends the payment provision constituted a condition precedent to Hardy's issuance of a final payment, that being, "[p]rior to final payment, Subtractor shall submit" releases from his subcontractors and suppliers, which Kratzer failed to do. Kratzer answers that because the Subcontract provided that the final payment was payable "thirty (30) days after final completion and acceptance of the Project by Owner," his payment was then due regardless of his failure to comply with the condition requiring submission of releases because these provisions conflicted with each other and created an ambiguity that must be resolved in his favor. Kratzer further contends that, in any event, Hardy waived the condition precedent by offering to make payment upon a general release signed by *Kratzer*, rather than signed by his subcontractors, as provided in the Subcontract. Thus, in Kratzer's view, Hardy was "attempting to add a new condition not contained in the contract at all. . . . That is contract modification." The District Court agreed with Kratzer, reasoning that "Hardy waived any right to request such a waiver [from Kratzer's subcontractors] after [Hardy] closed out the Project and requested a general release that was [not] required." Hardy replies that it was not required to re-request subcontractor releases because the Subcontract already unambiguously required it, and that the offer it made conditioned on Kratzer's signing of a general release was an offer of compromise made to expedite resolution of the dispute which did not forfeit the rights it held under the Subcontract until the parties agreed.

¶15   The parties' arguments encompass several principles of contract law. "A condition precedent is one which is to be performed before some right dependent thereon accrues or some act dependent thereon is performed." *Bender v. Rosman*, 2023 MT 140, ¶ 14,

8

413 Mont. 89, 532 P.3d 855 (quoting § 28-1-403, MCA). "Before a party may require another party to perform under an obligation, the requesting party must fulfill all conditions precedent required of the requesting party." *Bender*, ¶ 14 (citing § 28-1-406, MCA). "[N]on-satisfaction of a condition precedent to performance generally 'constitutes a breach of an enforceable contract.'" *Bender*, ¶ 14 (quoting *Davidson v. Barstad*, 2019 MT 48, ¶ 21, 395 Mont. 1, 435 P.3d 640).

¶16 A waiver of a contract requirement is "a voluntary and intentional relinquishment of a known right or claim," which may be proved "by express declarations or by a course of acts and conduct which induces the belief that the intent and purpose was waiver." *Dodds v. Tierney*, 2024 MT 48, ¶ 23, 415 Mont. 384, 544 P.3d 857 (quoting *Edwards v. Cascade Cnty.*, 2009 MT 229, ¶ 30, 351 Mont. 360, 212 P.3d 289). A party asserting a waiver "has the burden of showing: (1) another's knowledge of an existing right; (2) conduct deliberately inconsistent with the right; and (3) resulting prejudice to the party asserting the waiver if the other is allowed to reverse course and subsequently assert the right." *Peeler v. Rocky Mountain Log Homes Can., Inc.*, 2018 MT 297, ¶ 22, 393 Mont. 396, 431 P.3d 911 (citations omitted).

¶17 "A novation occurs when parties intend to substitute a new obligation for an existing one." *O'Brien v. O'Brien*, 2022 MT 246, ¶ 22, 411 Mont. 101, 532 P.3d 831. Section 28-1-1502, MCA, provides that a "[n]ovation is made by the substitution of: (1) a new obligation between the same parties with intent to extinguish the old obligation." Section 28-1-1502, MCA. Further, a novation requires analysis of the intent of the arrangement, and cannot be presumed:

9

> In order to effect a novation there must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement, for it is a well-settled principle that novation is never to be presumed; the point in every case, then, is, did the parties intend by their arrangement to extinguish the old debt or obligation and rely entirely on the new, or did they intend to keep the old alive and merely accept the new as further security, and this question of intention must be decided from all of the circumstances.

*Waite v. Andreassi*, 249 Mont. 149, 151, 813 P.2d 987, 989 (1991). Parties may modify a written contract through a subsequent written contract. *AAA Constr. of Missoula, LLC v. Choice Land Corp.*, 2011 MT 262, ¶ 27, 362 Mont. 264, 264 P.3d 709 (citing § 28-2-1602, MCA). Further, "[p]arties also may modify a written contract by an executed oral agreement." *AAA Constr. of Missoula, LLC*, ¶ 27 (citing § 28-2-1602, MCA).

¶18 The role of a court interpreting a contract is to effectuate the mutual intention of the parties at the time of contracting. Section 28-3-301, MCA. "Where a contract has been reduced to writing, the intention of the parties is to be ascertained, if possible, from the writing alone." Section 28-3-303, MCA. "If the terms of a contract are unambiguous, a court must apply the language of the contract as written." *Kalispell Aircraft Co., LLC v. Patterson*, 2019 MT 142, ¶ 17, 396 Mont. 182, 443 P.3d 1100 (citing *Est. of Irvine v. Oaas*, 2013 MT 271, ¶ 22, 372 Mont. 49, 309 P.3d 986). "The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the other." Section 28-3-202, MCA. "The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity." Section 28-3-401, MCA. "Montana law compels us to reject a contract interpretation that would lead to absurdities." *Rubin v. Hughes*, 2022 MT 74, ¶ 43, 408 Mont. 219, 507 P.3d

10

1169 (citing *First Nat'l Props., LLC v. Joel D. Hillstead Tr.*, 2020 MT 211, ¶ 30, 401 Mont. 59, 472 P.3d 134).

¶19 Starting with "the language of the [Subcontract] as written," *Kalispell Aircraft Co., LLC*, ¶ 17, the first sentence of the disputed provision states that "[f]inal payment shall become *payable*" within 30 days of acceptance of the Project by the Owner. Kratzer interprets this provision to mean "shall become *due*" within 30 days of acceptance. However, Black's Law Dictionary notes the subtle difference between these terms in its definition of "payable": "Of a sum of money or a negotiable instrument that is to be paid. An amount may be payable without being due." *Payable, Black's Law Dictionary* (7th ed. 1999). This definition fits the Subcontract provisions well, as the second sentence continues by explaining, "*[p]rior to* final payment Subcontractor shall submit" releases from his subcontractors. Taking the whole of the contract together to give effect to all provisions, § 28-3-202, MCA, Hardy is correct that the provision requiring subcontractor releases is a condition precedent that must be fulfilled before "a party to an obligation can require another party to perform any act under it," § 28-1-406, MCA—here, the contractual obligation of Hardy to make final payment to Kratzer. "[E]ach clause helping to interpret the other," § 28-3-202, MCA, these provisions are not, as Kratzer argues, in conflict or otherwise ambiguous such that courts are required to designate one as dispositive over the other. Indeed, Kratzer's interpretation would lead to an absurdity: a party could negate the condition precedent by simply waiting to submit subcontractor releases until the 30-day period had expired. *See Rubin,* ¶ 43 (We must "reject a contract interpretation that would lead to absurdities."). Consequently, Hardy would become obligated to perform—to make

11

final payment—upon satisfaction of the condition precedent. However, Kratzer never fulfilled the condition precedent.

¶20 Alternatively, Kratzer argues, and the District Court concluded, that Hardy waived the Subcontract's condition precedent for final payment by way of Hardy's December 2021 communication offering to make payment to Kratzer upon *Kratzer's* signing of a release, instead of releases signed by Kratzer's subcontractors, because Hardy was then pursuing a contract modification, or novation. Kratzer is correct on the last point—Hardy was indeed offering to resolve the dispute in a manner other than provided in the Subcontract by accepting Kratzer's signed release instead of requiring releases signed by Kratzer's subcontractors. However, this proposed novation never occurred; the parties did not come to an agreement "to extinguish the old obligation" and replace it with a new obligation. Section 28-1-1502, MCA. A novation requires the intention of the parties, which "is never to be presumed." *Waite*, 249 Mont. at 151, 813 P.2d at 989. Neither did Hardy waive the existing condition precedent—the "old obligation"—merely because it offered a modification. Waiver requires conduct "deliberately inconsistent" with an existing right (by Hardy) that ultimately results in "prejudice to the party asserting the waiver" (Kratzer) "if the other is allowed to reverse course" (Hardy) and again assert the right. *Peeler*, ¶ 22. Hardy did not engage in conduct inconsistent with an existing right; it merely offered to do so if Kratzer would agree. Further, Kratzer was not prejudiced by Hardy's offer to modify the contract; Hardy's offer was advantageously convenient to Kratzer, and Hardy's subsequent two settlement offers were increasingly beneficial to Kratzer's position. Under Kratzer's argument, a mere offer to settle a dispute under terms departing from a written

12

contract could constitute a waiver of existing rights, a result that could severely chill possible settlement discussions. Kratzer's choice to reject these modification offers kept he and Hardy in their original positions under the Subcontract, with Kratzer's potential claims and Hardy's potential defenses intact. In the end, it is undisputed that Kratzer neither satisfied the Subcontract's condition precedent for final payment nor accepted Hardy's offers of modification.

¶21 We conclude the District Court erred by entering summary judgment in favor of Kratzer. It was Hardy who was entitled to judgment as a matter of law. We thus reverse the summary judgment order in favor of Kratzer and remand for the District Court to enter judgment in favor of Hardy, which will include, as discussed below, Hardy's obligation to pay Kratzer what is owed to him under the Subcontract. Because we reverse summary judgment on this basis, we need not reach Hardy's further arguments presented related to Kratzer's other potential breaches of contract.[2]

¶22 Regarding interest, because we have concluded that Kratzer's conduct breached the Subcontract by failing to comply with the payment provision, final payment did not become due on January 5, 2022, and Hardy lawfully withheld it. Thus, Kratzer is not entitled to an award of interest.

---

[2] Hardy also argued that it was entitled to withhold payment or to require Kratzer sign a release and waiver due to other breaches of the Subcontract, including that Kratzer had performed defective work; Kratzer failed to submit the final pay application in a satisfactory form; Kratzer stated an intention to sue Hardy; and Kratzer's conduct allowed it to withhold payment under the Prompt Payment Act.

13

¶23 Likewise, regarding attorney fees, Kratzer is not the prevailing party in the litigation. Section 31 of the Subcontract contains the following provision regarding fees:

> If Contractor or Subcontractor files suit against the other, which suit is in any way connected with this Subcontract, the prevailing party shall be entitled to recover a reasonable sum for attorney fees from the other party. In addition, in the event Contractor is required to defend any action arising out of relating to Subcontractor's obligations hereunder, Subcontractor agrees to pay Contractor's reasonable costs and attorney fees, including costs and fees on any appeal.

Because Kratzer failed to satisfy the condition precedent to final payment, Hardy was entitled to withhold the payment. Hardy thus prevailed on the main issue in controversy—who had breached the Subcontract. While Hardy remains obligated to pay Kratzer the amount owed to him under the Subcontract, the central issue in controversy was resolved in Hardy's favor. Consequently, we reverse the District Court's award of attorney fees to Kratzer. As the prevailing party, Hardy may seek an award of reasonable fees upon remand.

¶24    *2. Whether the District Court erred in establishing the amount owed by Hardy under the Subcontract.*

¶25 Hardy argues the District Court erred by "utilizing offers of compromise to establish liability in contravention of Rule 408, Mont.R.Evid." However, the District Court determined that the undisputed evidence demonstrated that Hardy owed $81,153 for Kratzer's work under the Subcontract, an amount that Hardy does not ultimately contest, and therefore, we conclude that this amount was correctly calculated and that it is unnecessary to further analyze this issue.

14

## CONCLUSION

¶26 We reverse the District Court's Order granting summary judgment to Kratzer, including the awards for interest and attorney fees, and remand for entry of judgment in favor of Hardy. Under such judgment, Hardy must pay Kratzer $81,153 for services rendered under the Subcontract, less reasonable attorney fees and costs incurred by Hardy as determined by the District Court upon remand.

¶27 Affirmed in part, reversed in part, and remanded for further proceedings.

/S/ JIM RICE

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON